528 A.2d 975

**COMMONWEALTH of Pennsylvania**

v.

**Brandon Lee LYONS, Appellant.**

Superior Court of Pennsylvania.

Argued April 28, 1987.

Filed July 7, 1987.

Bruce L. Getsinger, Erie, for appellant.

Tim Lucas, Assistant District Attorney, Erie, for Com., appellee.

Before CIRILLO, President Judge, and MONTEMURO and TAMILIA, JJ.

TAMILIA, Judge:

After a trial by jury, appellant was convicted of one count each of statutory rape, 18 Pa.C.S. § 3122, involuntary deviate sexual intercourse, 18 Pa.C.S. § 3123, and corruption of minors, 18 Pa.C.S. § 6301. On December 16, 1985, the trial court denied appellant's timely post-trial motions and subsequently sentenced him to five (5) to ten (10) years imprisonment for the involuntary deviate sexual intercourse conviction, a concurrent term of ten (10) years probation for the statutory rape conviction, and a concurrent term of five (5) years probation for the corruption of minors conviction, plus the costs of prosecution. Appellant filed a motion to reconsider and modify sentence, which was denied by Order

dated April 8, 1986. A timely appeal to this Court was taken on April 11, 1986.[1]

Briefly stated, the facts are as follows. Appellant's convictions were the result of an incident occurring at his home on May 21, 1985. The victim, Rahdia Henderson, was twelve years old at the time and appellant eighteen years old. According to testimony at trial, the victim had skipped school that day and went to the home of one Tyrone Martin, where she had a telephone conversation with appellant, after which she went to appellant's house. At appellant's home, appellant and Rahdia engaged in sexual intercourse and oral sex. Rahdia left appellant's home during the afternoon. The next day, on May 22, 1985, Rahdia's grandmother was informed that she had been skipping school. When confronted by the grandmother, Rahdia told her that she had had intercourse with appellant, whereupon, the grandmother immediately took Rahdia to the hospital and notified the police. Appellant's principal defense at trial is that he never had any sexual activity with Rahdia.

Appellant's first claim on appeal is that the trial court erred in refusing to allow appellant's trial counsel to question the victim concerning her alleged sexual conduct on the day after the incident in question. In order for appellant to be allowed such cross-examination, he must fall within the exception detailed in the Pennsylvania Rape Shield Law, 18 Pa.C.S. § 3104(a), which provides as follows:

(a) **General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

**1.** Appellant was represented by his trial counsel throughout all post-trial motions; however, on appeal, appellant is represented by new counsel.

Since appellant was charged and convicted of statutory rape, the victim's consent is not at issue here. However, appellant argues that the victim's past sexual conduct should still be admissible to explain certain evidence which had been entered by the Commonwealth.

Specifically, the Commonwealth had a state police criminologist, Bruce Tackett, testify as to the existence or nonexistance of physical evidence, such as vaginal smears, pubic combings, etc., to prove the victim did have oral or vaginal intercourse with appellant. Although Mr. Tackett testified he could not draw any conclusion from the evidence given to him, during the course of his testimony he disclosed that there was the presence of blood in the victim's panties. Appellant contends the presence of blood might be viewed by the jury as an objective sign of intercourse and rebuttal evidence, in the form of examination concerning the victim's past sexual conduct, should be admissible to show that the victim could have had intercourse prior to or after the incident in question, thus explaining how the blood came to be there.[2] In support of this argument, appellant relies on the Pennsylvania Supreme Court case of *Commonwealth v. Majorana*, 503 Pa. 602, 470 A.2d 80 (1983).

In *Majorana, supra,* the defendant sought to introduce evidence of a sexual encounter between the victim and himself two hours before the victim was allegedly raped. Defendant's counsel stated that the purpose of the evidence was not offered to attack the victim's chastity but to explain the presence of semen in the victim's body. In ruling that the evidence should have been admitted, the Supreme Court stated:

> We do not believe the legislature intended to prohibit relevant evidence which directly negates the act of intercourse with which a defendant is charged. Where, as here, a defendant offers evidence of intercourse close enough in time to that act with which he is charged that it is relevant to explain the presence of objective signs of

---

2. Since Rahdia's clothing was not taken from her until the day after the incident, appellant contends sexual activity on that day would be relevant.

intercourse, the protections afforded to the complainant by the Rape Shield Law do not apply. Such evidence should be admitted, subject to the usual rules of admissibility of evidence, in particular the balancing of probative value against prejudicial effect.

Such an interpretation is consistent with the goals of the Rape Shield Law in protecting the victim's reputation and does not deny the defendant's right to introduce relevant evidence in his own defense. Cases where consent is genuinely 'at issue' are treated according to the exception set forth in the statute. However, in cases such as that which we have here, where denial of the act, not consent is at issue, evidence of consensual intercourse between defendant and complainant is limited to evidence of an act close enough in time to account for the objective signs of intercourse and is further limited to the purpose of explaining the presence of those objective signs. However, a defendant cannot engage in the wide-ranging and harassing cross examination the statute legitimately prohibits.

Thus, the Rape Shield Law does not preclude appellant from explaining the presence of semen and sperm in the victim's body. The act offered in explanation was not a prior 'separate incident' but an alternative account of the events of that evening offered to counter the prosecution's medical testimony. For that limited purpose it was admissible. To hold otherwise would deny appellant the chance to defend by presenting a denial of the prosecution's case.

*Id.*, 503 Pa. at 611, 470 A.2d at 84–5; *see Commonwealth v. Jorgenson,* 512 Pa. 601, 517 A.2d 1287 (1986) (interpreting *Majorana* ).

■ We find *Majorana* applicable to the present circumstances. The fact that appellant was charged and convicted of statutory rape, which crime does not involve the consent on the part of the victim, does not preclude the introduction of evidence that another person besides the defendant is

responsible for the objective evidence introduced by the Commonwealth to infer that the rape was committed.

██ The Commonwealth claims that the *Majorana* test does not apply here because the evidence produced by the state police did not establish that appellant, or anyone, had intercourse with the child. To preclude the possible inference to the jury that the blood on the panties was caused by intercourse, it should not have been admitted as evidence, particularly when the investigator could draw no conclusions from it. Had there been no introduction of the blood-spotted panties, there would have been no need for explanation of its presence. Since the only theory presented to explain the blood was intercourse with the defendant, he was seriously prejudiced when he was precluded from showing there was a plausible, contemporaneous alternate explanation for that evidence by way of intercourse with a third party the day before or after. Arguments are made by the Commonwealth that intercourse the day before or after is too remote. This misses the point which is whether the blood-stained panties arrived in that condition by contact with a third party, although not discovered until after the alleged intercourse with the defendant. Nothing in the record establishes when the panties were worn or for how long. Under such conditions, neither consent nor reputation is the issue, but rather, causal connection. Defendant denies intercourse with the child, the blood is a possible indication that intercourse occurred at about that time; therefore, it is permissible, under *Majorana,* to provide an alternate explanation for the presence of the blood.

Admission of the evidence of the blood-spotted panties made relevant the question of how the blood got there. Unless its presence was clearly restricted to the time when the defendant alone could reasonably be considered to have been involved in its production (which the record fails to show), it becomes an issue in the case.

Since we have concluded that the admission of the panties was prejudicial and the denial of the right to cross-examine

as to alternate sources of sexual contact was error, we need not consider the claims of ineffectiveness of counsel.

Judgment of sentence is vacated and case remanded for a new trial.

Jurisdiction relinquished.