582 A.2d 341

**COMMONWEALTH of Pennsylvania**

v.

**Elias NIEVES, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 18, 1990.

Filed Sept. 26, 1990.

Reargument Denied Nov. 27, 1990.

278

William R. Wheatly, Lancaster, for appellant.

James J. Karl, Asst. Dist. Atty., Lancaster, for Com., appellee.

Before OLSZEWSKI, KELLY and JOHNSON, JJ.

KELLY, Judge:

Appellant raises ten separate challenges to judgment of sentence imposed upon convictions arising from his knife point sexual assault of a 12 year old girl. Significant issues are raised regarding privacy claims pertaining to medical records subpoenaed in criminal trials, admissibility of gonorrhea results under the business records exception to the hearsay rule, and the proper application of the Rape Shield statute. We find no merit in any of the claims raised, and affirm judgment of sentence. We also deny allowance of appeal of discretionary aspects of sentence.

## Facts and Procedural History

Appellant was arrested, tried, and convicted of rape, involuntary deviate sexual intercourse, and various related offenses arising from his knife point sexual assault of the then 12 year old female victim on July 16, 1987. As the result of the assault, the child victim contracted gonorrhea.

Post-verdict motions were denied, and appellant was sentenced to a term of eight to twenty years imprisonment. A motion to modify sentence was denied. This timely appeal followed.

On appeal appellant raises ten allegations of error. We find no merit in the contentions and will discuss and dispose of each *seriatim*.

### I. *Trial Court Questioning*

■ First, appellant argues that the evidence was insufficient to sustain the rape conviction as the Commonwealth failed to elicit evidence that the 12 year old victim was not appellant's wife. The contention is severally flawed.

There was more than sufficient circumstantial evidence to sustain an inference beyond a reasonable doubt that the victim was not appellant's wife. Succinctly, the victim has testified that she was only 12 years old at the time of the attack, she did not know appellant prior to the attack, she never saw appellant prior to the attack, and she was only able to identify appellant as her attacker as the result of a photographic array supplied by the police. (N.T. 3/8/88 at 26–27, 32, 42–43). There could be no doubt that she was not appellant's wife. *See Commonwealth v. Simpson,* 316 Pa.Super. 115, 122, 462 A.2d 821, 824 (1983); *Commonwealth v. Schilling,* 288 Pa.Super. 359, 368, 431 A.2d 1088, 1092 (1981).

Moreover, any defect in proof of this point was plainly cured when the trial court asked the victim directly whether she was appellant's wife and she responded that she was not. (N.T. 3/8/88 at 53). The trial court's abundant caution in that respect was commendable. *See Commonwealth v. Tharp,* 575 A.2d 557, 558–59 (Pa.1990); *Commonwealth v. Roldan,* 524 Pa. 366, 368, 572 A.2d 1214, 1215 (1990); *Commonwealth v. Rasheed,* 392 Pa.Super. 280, 290, 572 A.2d 1232, 1239–40 & n. 4 (1990) (Kelly, J., concurring and dissenting); *Commonwealth v. King,* 378 Pa.Super. 553, 557–58, 549 A.2d 195, 197 (1988); *Commonwealth v. Johnson,* 355 Pa.Super. 123, 139–44, 512 A.2d 1242, 1251–52 (1986). The first contention is without merit.

II. *Privacy of Prison Medical Records*

▮ Next, appellant contends that his constitutional and statutory rights to privacy were violated when appellant's prison medical records were seized pursuant to a search warrant issued by a neutral and detached magistrate upon probable cause to believe that evidence of the crime of rape would be discovered, in that the records would confirm that appellant had gonorrhea, as had the victim's assailant. We find no merit in the contention.

Appellant claims that his right to privacy under the Disease Prevention and Control Law of 1955 (35 P.S.

§ 521.15), the Patient's Bill of Rights (28 Pa.Code § 115.27), the Clinical Laboratories Act (28 Pa.Code § 5.53), and the Constitution was violated. None of the statutory restrictions apply by their terms to *prison* medical records. More importantly, this Court has previously held that even statutorily privileged confidential medical records must be disclosed to the Commonwealth in sexual abuse cases when the presence or absence of venereal disease is relevant to an issue at trial. *Commonwealth v. Moore,* 378 Pa.Super. 379, 548 A.2d 1250 (1988). Moreover, we find no basis whatsoever for appellant's amorphous constitutional privacy claim.

Here, the Commonwealth obtained a search warrant for the evidence, rather than following the petition procedure described in *Moore.* While the petition procedure may be preferable, it is not mandated as yet by statute or by procedural rule. Though the subpoena process may lack safeguards provided by the petition procedure, we nonetheless find it adequate authority upon which the prison may rely in disclosing appellant's medical records.

Finally, even if the procedures followed were inadequate, exclusion would not be an appropriate remedy. There was no statutory exclusionary rule enacted in any of the statutes cited, and there has been no pattern of willful violations to warrant application of a judicially created exclusionary rule.

Hence, we find no merit in the second contention.

III. *Business Records Exception/Medical Tests*

█ Appellant contends that it was error to admit evidence of his positive test result for gonorrhea under the business records exception to the hearsay rule. We cannot agree.

This Court has previously held generally that medical opinions and diagnoses are not admissible as business records, but instead required live testimony by a qualified medical expert. *See e.g., Commonwealth v. Hemingway,* 369 Pa.Super. 112, 534 A.2d 1104 (1987). However, that general rule does not extend to records of the results of

standard tests for the presence of spermatozoa in the victim's vagina or for alcohol in a defendant's blood. *See Commonwealth v. Karch,* 349 Pa.Super. 227, 502 A.2d 1359 (1986); *Commonwealth v. Seville,* 266 Pa.Super. 587, 405 A.2d 1262 (1979). We find standard gonorrhea tests to be sufficiently similar to standard spermatozoa and alcohol tests to fall within the latter precedent, and outside the general rule.

Appellant argues further that even if business records of such standard tests were admissible generally, they should not be here, because the test was performed by an outside testing lab rather than by a prison employee on-site. Appellant seeks to analogize the testing lab to a mere bystander whose information could not properly become part of an admissible business record. *Cf. Hass v. Kasnot,* 371 Pa. 580, 92 A.2d 171 (1952).

The analogy, however, is a false one. Far from being a mere bystander, the testing lab was an independent contractor plainly providing the information included in the business record in the ordinary course of the business relationship. Much information in modern business records may be supplied by suppliers or purchasers, principal contractors or sub-contractors or other business people acting in the interdependent, information oriented context of modern business. It is the business purpose of the record, rather than the employee status of the source, which renders such hearsay evidence specially reliable. Hence, we see no reason to treat an off-site venereal disease blood test results differently than on-site results. *See* Binder, *Hearsay Handbook,* § 805, at 150–52 (1983 & 1989 supp.) (collecting cases involving non-employee generated business records). Hence, we reject appellant's challenge to the admissibility of the business records evidence of the gonorrhea test results.

### IV. *Contemporaneous Misconduct Evidence*

■ Appellant contends that the trial court erred in failing to declare a mistrial when the police officer, while recounting otherwise admissible portions of appellant's

statement to police, noted that appellant had admitted using cocaine on the night in question. We find no merit in the contention.

Evidence of contemporaneous bad acts, such as the use of cocaine, is admissible if it was part of the same transaction, completes or adds to the understanding of the events in question, and is not unduly prejudicial. *See Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835 (1989). The well-known stimulating and disinhibiting effects of cocaine provide a more than sufficient basis to conclude that the contemporaneous criminal conduct was admissible under the *res gestae* exception in a trial involving charges that the defendant committed sexual abuse on a twelve year old girl while high on cocaine. *See* MacDonald, *et al., Heavy Cocaine Use and Sexual Behavior,* 18 J. Drug Issues 437, 437–55 (1988) (reporting stimulating and disinhibiting effects; but, detailing various forms of sexual dysfunction caused by cocaine abuse); Gold, *800–Cocaine,* at 18–19 (3rd Ed.1986) (noting disinhibiting and stimulating effects, and potential for sexual dysfunction); Stone, Fromme, & Kagan, *Cocaine: Seduction and Solution,* at 20–21 (1984) (same). Given the potential of cocaine use to contribute to appellant's violent sexual aggression against the child victim, appellant's cocaine use was relevant and admissible.

Regardless, in an abundance of caution, the trial court sustained an objection to the passing, unsolicited remark, and a prompt curative instruction was given. The adequacy of that course of conduct was for the trial court to decide, and we find no abuse of discretion. *Commonwealth v. Gibson,* 389 Pa.Super. 518, 546, 567 A.2d 724, 738 (1989).

V. *Indirect References to Prior Misconduct*

Appellant raises two separate allegations of prejudicial suggestions of prior misconduct. He challenges the failure to give a curative instruction following two unsolicited remarks by the nurse witness (who presented the gonorrhea test results) that she worked at a prison. He also challenges the adequacy of a curative instruction given after the police officer's unsolicited, passing remark that a photo

array shown to a witness after the crime was comprised of photographs of persons arrested previously. We find no merit in the contentions individually or taken together.

■ The jury was aware that appellant had been arrested, and so the fact that a prison nurse had mentioned that appellant had been incarcerated when a *post*-arrest blood test was performed merely disclosed that he had not immediately been released on bail. That fact did not imply prior or unrelated criminal conduct. As the remark was relatively innocuous, we see no reason why the trial court should have drawn undue attention to it.

■ The disclosure that photographs used in an array were mugshots was improper. Nonetheless, we have no reason to doubt the efficacy of the simple curative instruction given by the trial court. *See Commonwealth v. Gibson, supra,* 567 A.2d at 737.

## VI. *Application of the Rape Shield Law*

Appellant contends that the trial court erred in refusing to permit him to cross-examine the victim on the issue of other sexual experience in an effort to suggest an alternate source of gonorrhea. We find no merit in the contention.

At common law, evidence of a female rape complainant's general reputation for morality and chastity was deemed admissible on the issue of consent. The result of this common law rule was notorious abuse of victim witnesses by aggressive defense counsel who essentially put the victim on trial. In response to such unjustifiable abuses, the federal government and the states enacted statutes known as Rape Shield laws. Rape Shield laws were intended to end the abuses fostered by the common law rule by limiting the harassing and embarrassing inquires of defense counsel into irrelevant prior sexual conduct of sexual assault complainants. *See* Williams, *Rape Reform Legislation and Evidentiary Concerns: The Law in Pennsylvania,* 44 U.Pitt.L.Rev. 955, 955–75 (1985); *see generally* White, *Evidentiary Privileges and the Defendant's Constitutional*

*Right to Introduce Evidence,* 80 J.Crim.L. & Crim. 377, 377–426 (1989); Kello, *Rape Shield Paradox: Complain and Protection Amidst Oscillating Tends Of State Judicial Interpretation,* 78 J.Crim.L. & Crim. 644, 644–98 (1987); Gavin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade,* 70 Minn.L.Rev. 763, 763–916 (1986); Haxton, *Rape Shield Statutes: Constitutional Despite Unconstitutional Exclusions of Evidence,* 1985 Wisc.L.Rev. 1219, 1219–72 (1985); Tall, *Evidence—Rape Shield Statutes,* 19 Gonzanga L.Rev. 437, 437–51 (1984); Ordover, *Admissibility of Patterns of Similar Sexual Conduct: The Unlamented Death of Character for Chastity,* 63 Cornell L.Rev. 90, 90–120 (1977).

Though laudable and long-overdue, Rape Shield laws, if rigidly construed, could impermissibly encroach upon a defendant's right to confront and cross-examine witnesses which is secured by the United States and Pennsylvania Constitutions. The manner in which those counterveiling interests are to be balanced has been the subject of considerable litigation in this Commonwealth and other jurisdictions. *See generally* Annotation, *Constitutionality of "Rape Shield" Statute Restricting Use of Evidence of Victim's Sexual Experiences,* 1 ALR 4th 283, 283–305 (1980 & 1989 Supp.); Annotation, *Admissibility in Incest Prosecution of Evidence of Alleged Victim's Prior Sexual Acts With Persons Other Than Accused,* 97 ALR 3d 967, 967–80 (1980 & 1989 Supp.); Annotation, *Modern Status of Admissibility, In Forcible Rape Prosecution, Of Complainant's General Reputation for Unchastity,* 95 ALR 3d 1181, 1181–97 (1979 & 1989 Supp.); Annotation, *Modern Status of Admissibility, In Forcible Rape Prosecution, Of Complainant's Prior Sexual Acts,* 94 ALR 3d 257, 257–86 (1979 & 1989 Supp.).

In *Commonwealth v. Majorana,* 503 Pa. 602, 470 A.2d 80 (1983), our Supreme Court construed the Pennsylvania Rape Shield law to intend to exclude only irrelevant and abusive inquiries, and not to exclude inquiries regarding relevant

evidence which would tend to disprove the allegation. 470 A.2d at 84. In *Majorana*, the defendant had made a specific offer to prove through the testimony of an identified third person that the semen and sperm detected in the victim's body, which had been offered as evidence to corroborate the victim's testimony, had actually come from a separate source. 470 A.2d at 81, 84.

In *Commonwealth v. Lyons*, 364 Pa.Super. 620, 528 A.2d 975 (1987), this Court held that a defendant had improperly been denied an opportunity to provide an alternate explanation for blood stains on panties offered to corroborate charges of child sexual abuse. A claim that the proffered evidence was too remote was rejected because of the indefiniteness as to when the panties were worn or stained. 528 A.2d at 978. The adequacy of the proffer made in that case was not otherwise discussed.

In *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985), this Court remanded for an evidentiary hearing as to whether the trial court improperly denied the defendant an opportunity to demonstrate a specific motive for the complainant to bring false charges against the defendant, because the defendant had allegedly thwarted the complainant's alleged incestuous relationship with her brother by throwing him out of the family home shortly before the challenged charges were brought. While the proffered evidence was deemed potentially relevant, this court, nonetheless, remanded for a hearing to determine whether the specific proffer was relevant, whether the proffered evidence was more probative than prejudicial, and whether alternative (unprivileged) grounds for impeachment existed. 487 A.2d at 401.

■ Taken together, *Majorana*, *Lyons*, and *Black* demonstrate that the Rape Shield law will bow to a defendant's right to confront and cross-examine when a specific proffer demonstrates that the proposed inquiry is intended to elicit relevant evidence, which is more probative than prejudicial, and which is not cumulative of other evidence available without encroaching upon Rape Shield law protections. *Ma-*

*jorana, Lyons,* and *Black,* thus, involve *limited exceptions* to the *broad exclusion* of the Rape Shield law.

The significance of the required offer of proof is demonstrated in our prior decision in *Commonwealth v. Troy,* 381 Pa.Super. 326, 553 A.2d 992 (1989). In *Troy,* this Court held that the defense counsel's proffer as to the relevance of evidence otherwise inadmissible under the Rape Shield law was too vague and conjectural to warrant even a remand for further inquiry under *Black,* 553 A.2d at 996– 97. The absence of an adequate *specific* proffer is, thus, fatal to challenges to Rape Shield protections.

It is true that in *Commonwealth v. Jorgenson,* 512 Pa. 601, 517 A.2d 1287 (1986) (per Zappala, Nix, C.J., and Flaherty, McDermott, JJ., join; Papadakos, J., dissents; Larsen and Hutchinson, JJ., join the dissent), a bare majority of our Supreme Court remanded for an evidentiary hearing *despite a vague proffer* of an alternate explanation for physical evidence offered in support of sexual abuse charges. By its terms, however, the majority opinion in *Jorgenson* was of extremely limited prospective precedential value. The failure to provide a specific proffer was deemed *excusable* because *Majorana* had not yet been decided, and because the trial court's express reliance upon *Commonwealth v. Duncan,* 279 Pa.Super. 395, 421 A.2d 257 (1980), had rendered any question of specificity of the proffer moot. 517 A.2d at 1290. In *Duncan,* this Court had construed the Rape Shield law broadly, as an essentially absolute bar without exceptions. The dissenting members of our Supreme Court in *Jorgenson* disagreed with the majority's conclusion that the absence of a specific proffer was excusable, and emphasized the patent inadequacy of the proffer. 517 A.2d at 1292.

We find that the allowance of remand for an evidentiary hearing in *Jorgenson* was limited to cases decided in the trial court prior to *Majorana, and* where the trial court expressly relied upon *Duncan.* As neither limitation is met here, we find *Troy* rather than *Jorgenson* controlling. The

absence of an adequate proffer here, was therefore fatal to appellant's claim.

■ While the *procedural* defect is sufficient to dispose of the claim, we find it appropriate to note the *substantive* deficiency of the claim as well. Substantively, a proffer seeking to avoid the Rape Shield law bar must meet the three prong test suggested in *Majorana,* and expressly set forth in *Black:* the evidence must be relevant; must be more probative than prejudicial; and may not be merely cumulative of other unprivileged impeachment or rebuttal evidence. *Majorana, supra,* 470 A.2d at 84–85; *Black, supra,* 487 A.2d at 401. Several cases have demonstrated the significance of these limitations.

In *Commonwealth v. Erb,* 524 Pa. 103, 569 A.2d 352 (1990), our Supreme Court reversed an unpublished order of this Court which had granted a new trial based upon the exclusion of excerpt from the complainant's diary describing her sexual interest in a boyfriend, which had been offered to establish a motive to make false charges of sexual assault against her father, who had allegedly thwarted the relationship between his daughter and the boyfriend by recently moving the family. *See Commonwealth v. Erb,* 380 Pa.Super. 645, 547 A.2d 436 (1988). The apparent basis for the *per curiam* reversal and reinstatement of the verdict and sentence was that the *Majorana* standard of relevance, probative value, and necessity had not been met. 569 A.2d at 352, *citing Commonwealth v. Majorana.*

In *Commonwealth v. Johnson,* 389 Pa.Super. 184, 566 A.2d 1197 (1989), this Court held that a proffer regarding a hearsay statement attributed to the complainant suggesting that another had sexually assaulted the complainant on a prior occasion was not sufficient to demonstrate an alternate explanation for the evidence or to demonstrate a motive to raise false charges. This Court agreed with the trial court that the evidence, even if arguably relevant, was nonetheless more prejudicial than probative and so was therefore properly excluded. 566 A.2d at 1202.

In *Commonwealth v. Appenzeller,* 388 Pa.Super. 172, 565 A.2d 170 (1989), this Court held that evidence of prior sexual abuse suffered by a three year old victim offered to provide an alternate source for the young child's rudimentary knowledge of sexual functions and terms, was not relevant because poor parental supervision of the child victim had made it "highly likely" that she had learned sexual functions and terms through sources other than the alleged sexual assault by appellant. Because the circumstance of that case were deemed not to render the child victim's rudimentary knowledge of sexual functions and terms incriminating as to Appenzeller, the proffered evidence of an *additional* alternate source the child victim's knowledge (through a sexual assault committed by another) was deemed to be more prejudicial than probative. 565 A.2d at 171.

In *Commonwealth v. Poindexter,* 372 Pa.Super. 566, 539 A.2d 1341 (1988), this Court held that, where the trial court had admitted evidence that the complainant was angry at the accused for filing criminal charges against her boyfriend, the trial court did not err in refusing to permit the accused to inquire as to the level of intimacy involved in complainant's relationship with her boyfriend. The inquiry was deemed to be focused on evidence which would have been of *minimal* probative value, but of *high* potential prejudicial impact. 539 A.2d at 1344.

Finally, in *Commonwealth v. Simmons,* 355 Pa.Super. 326, 513 A.2d 453 (1986), this Court held that proffered evidence that the complainant had made her allegations against the accused only when she was first confronted by her mother with a rumor that complainant was pregnant did not fall with the bias/motive precedent of *Commonwealth v. Black, supra.* This Court found that the proffer failed to demonstrate a sufficient motive to falsely accuse the defendant so as to render the evidence more probative than prejudicial, especially when the victim's delay in reporting the assault had otherwise been fully presented and argued to the jury. 513 A.2d at 454–55.

Taken together, *Erb, Johnson, Appenzeller, Poindexter,* and *Simmons* demonstrate the substantive limitations on the exceptions to Rape Shield law protections applied in *Majorana, Lyons,* and *Black.* These limitations are significant and cannot be ignored.

In summary, while the Rape Shield law must bow to the need to permit an accused an opportunity to present genuinely exculpatory evidence, the Rape Shield law nonetheless remains an effective limitation on abusive inquires addressed to irrelevant personal matters which were formerly conducted to harass and defame the complainant while distracting the jury from the legitimate issues involved in sexual assault cases. There is a delicate balance to be maintained. That balance is to be maintained by requiring a specific proffer and by evaluating the proffer for relevance, probativeness, and necessity. *See Commonwealth v. Majorana, supra; Commonwealth v. Black, supra; Commonwealth v. Troy, supra.*

Applying the foregoing to the instant case we have no hesitation in finding appellant's claim to be meritless. First, appellant made no proffer whatsoever. Rather, appellant concedes that he has no idea of whether any relevant evidence would be secured by his proposed inquiry. Indeed, for the inquiry to disclose *relevant* evidence, it would have to establish not only a separate sexual assault on the 12 year old victim, but a separate assault by a gonorrhea infected assailant within a time period which would account for the state of gonorrhea infection detected in the child victim. In neither the trial court, nor here on appeal, has appellant provided any basis to suggest that such evidence exists. We find no authority for the kind of "fishing expedition" style intrusions on Rape Shield law protections proposed by appellant in the Pennsylvania or United States Constitutions or in our prior case law.

Moreover, even if the inquiry were permitted and such evidence was discovered, such evidence would merely suggest a possible alternate source for the infection; it would not preclude appellant as the actual source of the infection.

Given the minimal probative value and high potential prejudice of such evidence, we would find no error in its exclusion. *Cf. Commonwealth v. Durst,* 522 Pa. 2, 559 A.2d 504 (1989); *Commonwealth v. Appenzeller, supra,* 565 A.2d at 172.[1] Hence, we find no error in declining to permit inquiry designed to seek such evidence.

Finally, even if the inquiry was improperly restricted, we would find that other overwhelming evidence rendered any error in the exclusion of this minimally relevant questioning harmless beyond a reasonable doubt. Hence, for each of the above reasons we find no merit in appellant's contention.

## VII. *Reciprocal Discovery*

Appellant next contends that he was prejudiced by the Commonwealth's failure to comply with the reciprocal discovery mandate of Pa.R.Crim.P. 305(C)(1)(c) when appellant served notice of intent to present an alibi defense. The trial court found that the appellant was well aware of the evidence to be presented to rebut his alibi claim, and that the technical error of the Commonwealth in not submitting a list with the complainant's name and the name of the police officer to whom prior inconsistent statements had been made by appellant was harmless. Appellant was aware that the victim would contradict his alibi claim, and he was provided with copies of the police reports which recorded his prior inconsistent statements during informal discovery. These facts render *Commonwealth v. Jackson,* 457 Pa. 79, 319 A.2d 161 (1974) materially distinguishable. The trial court found the *purpose* of the Rule to have been fulfilled despite the technical violation of its letter, and

1. In this regard, both *Majorana* is materially distinguishable. Succinctly, in *Majorana* the physical evidence could have had only one source; consequently, acceptance of the alternate source would disprove the prosecution's proffered source and would thereby directly and significantly undermine the charges. Here, since appellant and the victim have gonorrhea, and the source of gonorrhea could not be determined even if there were an identified alternate *additional* potential source, the exculpatory impact of alternate source evidence would be considerably less than that in *Majorana.*

concluded that no relief was appropriate, then or now. We agree. *Commonwealth v. Pickford,* 370 Pa.Super. 444, 536 A.2d 1348 (1987), *appeal granted* 520 Pa. 596, 552 A.2d 251 (1988).

### VIII. *Challenge to Discretionary Aspects of Sentence*

██ Finally, appellant contends that the trial court abused its discretion in imposing *concurrent* sentences of 8 to 20 years imprisonment for involuntary deviate sexual intercourse and 2½ to 5 years imprisonment for terroristic threats. We deny allowance of appeal as to these issues.

Appellant has failed to include a concise statement of reasons for allowance of appeal. Pa.R.A.P. 2119(f). Moreover, cursory review of the brief and the record reveals the complete absence of a substantial question. The seriousness of the offense, aggravating circumstances of the victim's age and appellant's other offenses[2] fully warranted the sentence imposed. Moreover, review of the contents of the Pre–Sentence Report including the Victim Impact Statements was entirely proper. *See Commonwealth v. Penrod,* 396 Pa.Super. 221, 232, 578 A.2d 486, 491 (1990); *Commonwealth v. McLaughlin,* 393 Pa.Super. 277, 286, 574 A.2d 610, 614–15 (1990); 42 Pa.C.S.A. §§ 9721, 9731 *et seq.;* 71 P.S. § 180–9.3(1). No one prevented appellant from subpoenaing witnesses for the sentencing hearing to cross-examine, impeach, or rebut witnesses regarding statements in those reports, or from seeking a continuance to do so. *See* 42 Pa.C.S.A. § 9721. Hence, the procedural challenge is specious. Because the substantive claim is plainly meritless, we decline to direct the purposeless act of supplementing the brief to bring it into compliance with Pa.R.A.P. 2119(f).

2. Appellant was convicted and sentenced to probation on three robbery counts in 1980. More significantly, this panel has recently affirmed judgment of sentence imposed on appellant's convictions of rape and terroristic threats in a separate knife point sexual assault on an adult victim. *See Commonwealth v. Nieves,* 579 A.2d 419 (Pa.Super.1990).

*Conclusion*

Based upon the foregoing, we affirm judgment of sentence and deny allowance of appeal of the discretionary aspects of sentence.

JOHNSON, J., filed a concurring and dissenting opinion.

JOHNSON, Judge, concurring and dissenting:

I join in the majority's decision to affirm Nieves' conviction, and I agree with the majority's analysis and disposition of the issues regarding the trial court questioning, the contemporaneous misconduct evidence, indirect references to prior misconduct, reciprocal discovery, and the challenge to discretionary aspects of sentencing. However, I do not join in any part of the analysis of the Rape Shield Law issue. I agree with the majority only in that the requested permission to conduct a cross-examination regarding the victim's prior sexual activity was properly denied.

In this case both Nieves and the twelve-year-old victim had gonorrhea. The victim had been infected less than forty-eight hours before the post-assault examination. Nieves wanted to cross-examine the victim in an attempt to show that she had sexual relations with others, which would be an alternate source of her gonorrhea. He did not have a proffer of specific evidence but rather essentially asked the court to allow him to conduct a fishing expedition. The Rape Shield Law, codified at 18 Pa.C.S. § 3104, provides:

> (a) **General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

**(b) Evidentiary proceedings.**—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S. § 3104.

The statute is unambiguous, and the legislative intent is clear. In enacting this statute and making evidence of past conduct or reputation for past conduct inadmissible, the legislature "totally reject[ed]" the notion that the past conduct of the complainant is probative of consent to the act at issue. *Commonwealth v. Majorana,* 503 Pa. 602, 609, 470 A.2d 80, 83 (1983). The legislature made a strong statement that *any* use of prior sexual conduct with a third person for the purpose of proving consent or moral defect is prejudicial and of only limited probative value.

The statute allows consideration of whether past conduct evidence is admissible only if the victim and the defendant had past sexual relations, and the defense is consent. In § 3104(b) the statute sets forth a rigorous procedure to determine whether to admit or to exclude the evidence. Preliminarily, the defendant must place consent in issue by an offer of proof of evidence supporting the allegation, and only if the offer is sufficient on its face will the court then conduct an in camera hearing to determine whether the proffered evidence should be excluded pursuant to the rules of evidence; that is, even if logically relevant, the evidence should be excluded if its probative value is outweighed by unfair prejudice. 18 Pa.C.S. § 3104(b); *See Commonwealth v. Black,* 337 Pa.Super. 548, 487 A.2d 396 (1985).

The Rape Shield Law has withstood challenges to its constitutionality. In *Commonwealth v. Quartman,* 312 Pa.Super. 349, 458 A.2d 994 (1983) this court decided that

the Rape Shield Law did not violate the defendant's right to confrontation, and in *Commonwealth v. Strube*, 274 Pa.Super. 199, 418 A.2d 365 (1979), *cert. denied, Strube v. Pennsylvania*, 449 U.S. 992, 101 S.Ct. 527, 66 L.Ed.2d 288 (1980), we decided that the procedure set forth in 3104(b) does not violate a defendant's constitutional right to due process. In *Quartman* the court explained that the:

> fundamental right to confront witnesses often gives way, however, to certain evidentiary principles. The exclusion of hearsay evidence, for instance, is premised on the idea that such statements often lack the relevancy necessary to outweigh their questionable truthfulness and potential prejudice. In the same way, prejudicial and irrelevant opinion and reputation evidence is often excluded. These varied evidentiary exclusions do not deny an accused his right to a fair trial[,] as his need for the evidence is outweighed by considerations of truth and relevancy. Similarly, there is no constitutional right of the accused in a rape case to introduce evidence that is prejudicial, inflammatory and irrelevant.

*Commonwealth v. Quartman*, 312 Pa.Super. 349, 353, 458 A.2d 994, 996 (1983).

Our courts have created two additional narrowly-drawn exceptions to the evidence bar in addition to the exception supplied by the statute itself. In *Commonwealth v. Majorana*, 503 Pa. 602, 470 A.2d 80 (1983), semen was present in the victim after the alleged attack. The defendant's defense was that there never was an attack but that semen was present because he had consensual sex with the victim two hours before the alleged attack. The Supreme Court distinguished this situation from a consent defense and held that in order to preserve the defendant's right to confrontation, the Rape Victim Shield Law may not automatically bar evidence that an act other than the charged rape produced the objective signs of intercourse. Such evidence would be directly relevant to negate that there even was a sexual act between the victim and the defendant at the time of the

alleged attack. However, the court emphasized that the proffered evidence must be:

> evidence of an act close enough in time to account for the objective signs of intercourse and is further limited to the purpose of explaining the presence of those objective signs. *However, a defendant cannot engage in the wide-ranging and harassing cross examination the statute legitimately prohibits.*

*Majorana,* 503 Pa. at 611, 470 A.2d at 85 (emphasis added).

In *Commonwealth v. Black,* 337 Pa.Super. 548, 487 A.2d 396 (1985), this court carved out a second exception to the absolute bar of the Rape Shield Law. A father was convicted of the statutory rape of his thirteen-year-old daughter. In defense, the father sought to introduce evidence that the daughter was having relations with her brother, which the father discovered. The father claimed that his discovery of this relationship triggered the daughter's retribution through false accusation. We held that the Rape Shield Law cannot unequivocally bar such evidence. The *Black* court cautioned, however, that:

> While we hold that Pennsylvania's Rape Shield Law may not be used to exclude relevant evidence showing witness' bias or attacking credibility, we do not hold that all material evidence is necessarily admissible. Although logically relevant, evidence tending to show the victim's prejudice or lack of credibility may be excluded if "it would so inflame the minds of the jurors that its probative value is outweighed by unfair prejudice." *Commonwealth v. Stewart,* 304 Pa.Super. 382, 387, 450 A.2d 732, 734 (1982) (additional citations omitted).

*Commonwealth v. Black,* 337 Pa.Super. 548, 557, 487 A.2d 396, 401 (1985). Significantly, the court determined that the evidence balancing determination should proceed by the proffer and *in camera* hearing procedure as mandated by 18 Pa.C.S. § 3104(b).

The majority states that "[t]hough laudable and long-overdue, Rape Shield laws, if rigidly construed, could impermissibly encroach upon a defendant's right to confront and

cross-examine witnesses which is secured by the United States and Pennsylvania Constitutions." Majority Opinion at 9. This statement improperly suggests that a re-evaluation of constitutionality by means of balancing the interests must occur every time the Rape Shield Statute is invoked.

First, the question of the Rape Shield Law's constitutionality has been resolved by our courts and should not be under consideration in the present case. Further, reasoning from the premise of constitutionality, *Majorana* and *Black* create the only two exceptions to the absolute bar of the statute outside of the single exception included in the statute itself. The question of constitutionality, by means of applying a balancing of interests test, should not be revisited in every rape case. No authority approves such an approach. Unless the defendant presents the court with evidence that on its face establishes that either the statutory or one of the two judicially-created exceptions applies, the proffered evidence or requested cross-examination will be excluded on the basis of the Rape Shield Law without further consideration. § 3104; *Majorana, supra; Black, supra.* That the majority invokes numerous cases that consider whether one of these exceptions applies does not prove the contrary; the discussion only creates a misleading impression that courts always go beyond the plain language of the statute when applying the Rape Shield Law.

No cautious analysis is required in the case before us. Rather, it calls for direct application of the law to a fact situation that has already been considered by our Supreme Court. Nieves wanted to cross-examine the victim about prior sexual activity in order to uncover an alternative source of her gonorrhea. Therefore, under *Majorana,* if Nieves had proffered evidence that the victim had intercourse with another person infected with gonorrhea within forty-eight hours of the incident in question, the court may have allowed such evidence if, following an *in camera* hearing, it determined that the probative value of the evidence outweighed introduction of unfair prejudice.

However, Nieves offered no specific evidence of prior sexual intercourse of the victim with a particular person or a particular time close to the alleged assault. Opinion, Hon. D. Richard Eckman, President Judge, filed March 10, 1989. Rather, he asked permission to cross-examine the victim about her prior sexual activity generally. Because Nieves asked to cross-examine the victim generally regarding her past sexual activity and did not proffer specific evidence, we never reach the *Majorana* exception. No balancing is called for. All we must do is to apply the Rape Shield Law. I would hold that the trial court properly denied Nieves' request for permission to cross-examine the victim regarding her prior sexual experience on the sole basis that the Rape Shield Statute prohibits it.

I would also add to the majority's analysis of the admissibility of prison medical records and scope of business records exception issues that Nieves' argument based upon the Disease Prevention and Control Law of 1955, codified at 35 P.S. 521.1 et seq., fails on the basis of the reason given by the trial court, that although the act contains penalties, none of these penalties are exclusion of evidence. Further, I would hold that *Commonwealth v. Moore,* 378 Pa.Super. 379, 548 A.2d 1250 (1988), *alloc. granted* 521 Pa. 616, 619, 557 A.2d 720, 722 (1989), which interprets 35 P.S. § 521.1 et seq, defeats both a challenge to the admissibility of the medical records that Nieves had gonorrhea and a challenge to the manner of its admission.