COMMONWEALTH of Pennsylvania, Appellee

v.

John RUGGIANO, Jr., Appellant.

Superior Court of Pennsylvania.

Submitted July 12, 2010.

Filed Dec. 13, 2010.

Reargument Denied Feb. 16, 2011.

Keith J. Bidlingmaier, Newtown, for appellant.

Nathaniel F. Spang, Assistant District Attorney and David W. Heckler, Assistant

District Attorney, Doylestown, for Commonwealth, appellee.

BEFORE: LAZARUS, OLSON, and FREEDBERG, JJ.

OPINION BY LAZARUS, J.:

John Ruggiano, Jr. appeals from the judgment of sentence entered in the Court of Common Pleas of Bucks County. Because we find that the trial court improperly precluded evidence pursuant to the Rape Shield Law, 18 Pa.C.S.A. § 3104, we reverse and remand for a new trial.

Ruggiano was charged with involuntary deviate sexual intercourse (IDSI) with a child, two (2) counts of indecent assault of a person less than 13 years of age, and indecent exposure. The charges arose out of the various acts Ruggiano committed upon his two younger cousins, JS and JAS, who are brothers.[1] The crimes against JS occurred from 1995 to 1999; the crimes against JAS occurred in 2001. Ruggiano was under the age of 18 when the crimes were committed, but was 21 when he was charged.[2]

Both the Commonwealth and Ruggiano filed pretrial motions. The Commonwealth filed a motion in limine seeking to preclude, pursuant to the Rape Shield Act, 18 Pa.C.S.A. § 3104, any references to JS's juvenile adjudications arising from his sexual misconduct with another individual. Motion in Limine, 5/12/2008. Ruggiano filed a motion to allow him review of the Children and Youth Services' file concerning the complainants' family, as well as to review the juvenile court files for both complainants. Petition, 3/31/2008. Ruggiano also filed a motion in limine seeking to preclude JS's testimony as Ruggiano was a juvenile at the time of the alleged sexual abuse, Motion in Limine, 5/13/2008, and a motion to transfer proceedings to Juvenile Court. Motion, 5/13/2008.

On May 13, 2008, following a hearing, the trial court granted the Commonwealth's motion to preclude any references to JS's juvenile adjudications arising from his sexual misconduct with another individual, and denied all of Ruggiano's motions.

Before a jury was empaneled, Ruggiano entered into a plea agreement, wherein he pled guilty to all charges and the Commonwealth agreed not to pursue the applicable five-year mandatory minimum. Prior to sentencing, however, Ruggiano obtained new counsel and filed a motion to withdraw his guilty plea. The trial court granted that motion.

On January 6, 2009, just prior to trial, Ruggiano filed a motion in limine, entitled Motion Pursuant to the Rape Shield Act, To Bring Out Prior Convictions and Misconduct of the Victim and the Victims' Family. Motion in Limine, 1/6/09. In that motion, Ruggiano alleged that JS had been adjudicated in juvenile court in 2007 of committing a sexual assault on another family member, and that another brother in the family had also been adjudicated in juvenile court of sexually assaulting other siblings. Id. at 2.

---

1. Both victims have the initials J.S.; for clarity we refer to the first victim, the older brother, as JS, and the younger victim as JAS.

2. Ruggiano's date of birth is September 13, 1985. The assaults on JS were committed between 1995 and 1999, when Ruggiano was between the ages of 10 and 14 and the victim was between the ages of 6 and 10. The assaults on JAS occurred in 2001, when Ruggiano was 16. The Commonwealth did not charge Ruggiano until November of 2006, at which time Ruggiano was 21 years old. Although Ruggiano raised in his Pa.R.A.P. 1925(b) statement a challenge to the court's denial of his motion to transfer proceedings to Juvenile Court pursuant to 42 Pa.C.S.A. § 6322, he has not raised that issue in his brief to this Court.

A hearing was held on January 7, 2009. At that hearing, Ruggiano made an offer of proof, essentially seeking to show that the victims made false allegations against him to deflect attention from the above mentioned allegations being made against them. Following the hearing, the court denied Ruggiano's motion.

On January 14, 2009, Ruggiano was tried before a jury and convicted of indecent assault with respect to JS and indecent exposure with respect to JAS; the jury acquitted Ruggiano of IDSI with respect to both victims and acquitted Ruggiano of indecent assault with respect to victim JAS. The court sentenced Ruggiano to a term of imprisonment of 7–23 months in the Bucks County Correctional Facility. This appeal followed.

Ruggiano raises three issues for our review:

1. The Trial Court erred by not granting a mistrial when Officer Rawa testified that Appellant, through his first interview, appeared very deceptive.

2. The Trial Court erred by not granting a mistrial when the Prosecutor elicited testimony about uncharged sexual incidents, which were outside the scope of the Criminal Information.

3. The Pre–Trial Motions/Court and Trial Court both erred in denying Appellant's pretrial motion to admit evidence, references and/or questioning of the alleged victim's past sexual conduct, convictions, as well as other family members' past sexual conduct and convictions.

Because we find merit to Ruggiano's third issue, and we reverse and remand for a new trial, we need not address Ruggiano's first two claims.

Ruggiano argues that the trial court improperly applied the Rape Shield Law to exclude evidence of JS's juvenile adjudication of delinquency for sexual misconduct that occurred prior to the time the charges against Ruggiano were brought. He also argues that the jury should have been made aware that there was an atmosphere of promiscuity in the victims' home and that various sexual assaults had been committed by one of the victims and by another sibling upon other siblings in the home. Ruggiano argues that these adjudications and the family dysfunction were probative of his claim that the victims had a motive to fabricate claims of assault at the hands of their cousin to protect their siblings or to deflect attention from their own behavior. Additionally, Ruggiano claims that this evidence was relevant to attack the victims' credibility because the victims, who were young at the time of the assaults, may have been confused as to who had assaulted them in light of the various assaults going on in the household at that time. We agree.

The Rape Shield Law, 18 Pa.C.S.A. § 3104, provides:

§ 3104. **Evidence of victim's sexual conduct**

(a) General rule.-Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

(b) Evidentiary proceedings.—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct

pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S.A. § 3104.

The purpose of the Rape Shield Law is to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim. 18 Pa.C.S.A. § 3104. In *Commonwealth v. Johnson*, 389 Pa.Super. 184, 566 A.2d 1197, 1202 (1989) (*en banc*), this Court held that the Rape Shield Law is a bar to admission of testimony of prior sexual conduct involving a victim, whether it is consensual or the result of nonconsensual or assaultive behavior, *unless it has probative value which is exculpatory to the defendant.* Under such circumstances, the trial court in an in camera hearing will carefully weigh the evidence, and in his/her discretion make a determination as to the admissibility of that evidence. *Id.* In doing so, the court will determine whether its probative value outweighs its prejudicial effect. In the absence of an abuse of discretion, that decision will stand on appeal. *Id.* "As applied to the Rape Shield Law, relevant evidence is that which may tend to directly exculpate the accused by showing that the alleged victim is biased and thus has a motive to lie or fabricate." *Commonwealth v. Guy*, 454 Pa.Super. 582, 686 A.2d 397, 401 (1996).

■ After our review, we conclude the trial court erred in denying Ruggiano's motion. First, the Rape Shield Law is not applicable here because the evidence that was excluded does not relate to the complainants' chastity or morality, but to their credibility, in particular, the victims' motive to fabricate charges of sexual assault. Further, the Rape Shield Law may not be used to exclude relevant evidence. Here, the evidence was relevant to show bias or motive to fabricate, and thus relevant for impeachment purposes. *See Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396, 401 (1985) (en banc). Bias or motive to fabricate is relevant to credibility, and a successful showing of either or both would tend to make the facts to which the victims testified less probable in the eyes of the jury than it would be without such evidence. *See* Pa.R.E. 401, 402, 404(b)(2); *see also* Pa.R.E. 607(b) ("The credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these Rules.").

■ Further, the Rape Shield Law would only bar this evidence if its probative value was outweighed by its prejudicial effect. The prejudice sought to be avoided by the Rape Shield Law is an attack upon the victim's chastity or virtue, and to prevent the trial from degenerating into an attack upon the collateral issue of the complainant's reputation rather than focusing on whether the events alleged by the complainant occurred. *See Commonwealth v. Berkowitz*, 537 Pa. 143, 641 A.2d 1161, 1165 (1994). As Ruggiano argues, he did not have "a noisome stream of defense witnesses" lined up to testify, nor was this an attack on the victims' chastity. *Commonwealth v. Majorana*, 503 Pa. 602, 470 A.2d 80, 84 (1983). The evidence was relevant to show that the victims lived in a sexually permissive and dysfunctional environment, which might explain the victims' motives to fabricate to protect their siblings or to deflect attention from their own behavior. Additionally, it was relevant to show why the victims might incorrectly

target Ruggiano as the perpetrator as a result of their youth and confusion, particularly in light of the offer of proof that sexual misconduct going on in the household was rampant and the ages of the victims at the time of the assaults. At the hearing on the motion *in limine*, counsel suggested that since JS was the only biological child in the household (the other eight children had been adopted), that protecting JS may have been a motive for fabrication. N.T. Hearing, 1/12/09, at 120–122.[3] *See Commonwealth v. Fernsler*, 715 A.2d 435 (Pa.Super.1998) (where truth-determining process is not forwarded by exclusion of sexual abuse complainant's past sexual history, the Rape Shield Law, if rigidly construed, could impermissibly encroach upon defendant's right to confront and cross-examine witnesses; in those cases, Rape Shield Law must bow to the need to permit accused an opportunity to present genuinely exculpatory evidence). *See also Commonwealth v. Jones*, 826 A.2d 900 (Pa.Super.2003) (Pennsylvania's Rape Shield Law covers any conduct that occurred prior to trial, not just that which occurred prior to the incident in question).

We find the case of *Commonwealth v. Eck*, 413 Pa.Super. 538, 605 A.2d 1248 (1992), instructive. In *Eck*, this Court was asked to consider whether the Rape Shield Law barred evidence of a victim's sexual conduct while the victim resided in a foster home. Eck filed a motion *in limine* arguing that this evidence was necessary to establish that the victim, his foster brother, had a motive for testifying falsely against him. Eck argued that evidence of the victim's sexual conduct while residing at the foster home was "directly relevant to demonstrating the alleged victim's bias, attacking his credibility, showing his prejudice, demonstrating his motive, negating the act [with] which Defendant is charged [and] showing hostility. . . ." *Id.* at 1254. Eck's offer of proof was that "the evidence was relevant to [his] defense that [the victim] had fabricated the incident." *Id.* Specifically, the victim there had a juvenile record for sex offenses against another juvenile committed while the juvenile resided at a foster home. Eck argued that evidence of the juvenile victim's prior record, his probationary status for that offense and his commission of that act should not be barred by the statute because it would demonstrate his bias, prejudice or motive to fabricate. Eck theorized that the juvenile would have a motive to fabricate the sexual assault charges against him because of the juvenile's fear of having violated the terms of his probation because of underage drinking. Because of this violation, the victim was placed at a disciplinary level in the foster home. Eck maintained that the victim's fear of this disciplinary action may have triggered a motive to fabricate the sexual assault charges against him (Eck). This Court held:

> By excluding evidence of [the victim's] juvenile record and his prior sexual conduct, the trial court prevented appellant 'from showing the existence of a possible ulterior motive on the part of the complainant . . ., [and] defense counsel was unable to cross-examine the complainant effectively. . . .' [The] Appellant theorizes that, as the perpetrator of a sexual offense, [the victim] learned that victims receive more favorable treatment than

---

**3.** The complaints against Ruggiano were initiated in December of 2006, when the parents of JS and JAS contacted police and requested that police interview JAS concerning these allegations. JS was adjudicated delinquent in 2007 for sexual assault. Although the exact timeline is not clear from the record, it is plausible, as Ruggiano suggests, that the complaints against JS precipitated those against Ruggiano. As Ruggiano points out, JS's adjudication came just months prior to these charges being brought.

do perpetrators. [The] Appellant contends that, fearing disciplinary action for violating [the placement facility's] rules, [the victim] fabricated the charges against [the] appellant. The jury may have found [the] appellant's theory to be credible or incredible. Nevertheless, the jury had a right to hear the evidence of the victim's juvenile record and/or past sexual conduct, if relevant, and if it substantiated appellant's theory of fabrication, so long as the probative value of the evidence was not outweighed by its unfair prejudicial effect. We therefore conclude that the trial court erred in excluding this evidence outright.

605 A.2d at 1255.

Similarly, in his offer of proof, Ruggiano sought to present evidence of JS's juvenile adjudication and the promiscuous environment in which the victims lived to show the victims' motive to fabricate and to attack the victims' credibility. At the hearing on the motion *in limine,* counsel suggested that one of the victims as well as other siblings in the home were having sexual contact with younger members in the family. N.T. Hearing, 1/7/09, at 32; N.T. Hearing, 1/12/09, at 121. In our opinion, the evidence excluded here was just as probative as that excluded in *Eck,* if not more so. Without it, we believe the truth-determining process was compromised, as was Ruggiano's right to confront and cross-examine the witnesses against him. *See Commonwealth v. Majorana, supra; Commonwealth v. Lyons,* 364 Pa.Super. 620, 528 A.2d 975 (1987); *Commonwealth v. Black,* 337 Pa.Super. 548, 487 A.2d 396 (1985). *See also Commonwealth v. Nieves,* 399 Pa.Super. 277, 582 A.2d 341, 347 (1990) (rape shield law "will bow to a defendant's right to confront and cross-examine when a specific proffer demonstrates that the proposed inquiry is intended to elicit relevant evidence, which is more probative than prejudicial, and which is not cumulative of other evidence available without encroaching upon Rape Shield law protections."); *Commonwealth v. Northrip,* 945 A.2d 198 (Pa.Super.2008) (testimony by defendant's second wife about her observations of sexual activity between her son and defendant's daughter was admissible despite the Rape Shield Statute, in trial of defendant for sexual crimes involving his minor daughter, as it established potential motive by defendant's daughter to fabricate allegations against her father, and probative value of testimony was not outweighed by prejudicial value); *Commonwealth v. Wall,* 413 Pa.Super. 599, 606 A.2d 449, 459 (1992) (evidence that 12–year–old sexual abuse complainant had previously been removed from mother's home and placed in home of defendant after she was sexually abused by mother's paramour, was admissible to support defendant's contention that complainant fabricated sexual abuse allegations against him because she wanted to be removed from defendant's home in order to avoid harsh discipline by defendant's wife).

We conclude, therefore, the trial court improperly applied the Rape Shield Law to preclude evidence that bore directly on not only the victims' credibility but also on their bias or motive to fabricate charges. Further, because the evidence would not have focused on the victims' reputation for chastity as the Rape Shield Law was designed to protect, its probative value was not outweighed by its prejudicial effect.

Reversed and remanded for new trial. Jurisdiction relinquished.

OLSON, J., concurs in the result.