554 A.2d 104

**COMMONWEALTH of Pennsylvania**

v.

**James DAVIS, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 29, 1988.

Filed Feb. 14, 1989.

---

486

Mitchell S. Strutin, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before OLSZEWSKI, KELLY and HESTER, JJ.

KELLY, Judge:

James Davis, appellant, appeals *nunc pro tunc* from the judgment of sentence imposed following his convictions of first degree murder, conspiracy and possession of an instrument of crime. We affirm.

Appellant has raised four contentions of error for our consideration on this appeal. Primarily, we are concerned with appellant's first contention, *i.e.* that the trial court erred by denying his motion for a mistrial and admitting into evidence the testimony of a police officer regarding a

visibility/identification experiment which was offered to corroborate the testimony of the Commonwealth's principal witness whose testimony regarding her observation of the crime had been impeached by the defense as not credible. Upon our review of the record, the briefs, the applicable authorities and caselaw, we find that this contention, as well as appellant's three other contentions, are without merit. Consequently, we affirm the judgment of sentence.

## FACTS AND PROCEDURAL HISTORY

On March 19, 1978, between 9:30 p.m. and 9:45 p.m., appellant and Willie Truesdale [1] (hereinafter "Truesdale") were engaged in a fight with Melvin Fields on the sidewalk in front of 1904 N. Napa Street, Philadelphia. Appellant and Truesdale punched Fields and knocked him to the ground. After Fields had fallen, appellant and Truesdale ran to the corner of Napa and Berks Streets where they stopped, turned around, and returned to the place where Fields was lying. At that point, they stabbed Fields three times in the chest and then fled the scene together. Fields died a short time later as a result of knife wounds to his heart and lungs.

On March 5, 1984, appellant was arrested and charged with murder, conspiracy and possession of an instrument of crime. On November 9, 1984, a jury, presided over by the Honorable Joseph T. Murphy, found appellant guilty of first degree murder, conspiracy and possession of an instrument of crime. On January 22, 1986, appellant's post-trial motions were denied and he was sentenced to a term of imprisonment for life on his first degree murder conviction and a concurrent term of five to ten years imprisonment on his conspiracy conviction. A notice of appeal was filed and subsequently dismissed on July 14, 1986, without prejudice, for failure to file a brief. On February 26, 1988, an order

---

1. Willie Truesdale was appellant's co-defendant. The jury convicted him of the same offenses and the trial court imposed identical sentences. Thereafter, he appealed to this Court twice. Each appeal, however, was dismissed for failure to file a brief. *See* Commonwealth's Letter of August 26, 1988 at 2 n. 1.

entered by the Court of Common Pleas of Philadelphia County granted appellant the right to appeal *nunc pro tunc.* Appellate counsel was appointed and this timely appeal followed.

## I. MISTRIAL:
## VISIBILITY/IDENTIFICATION EXPERIMENT

Appellant first contends that the trial court erred when it denied his request for a mistrial after the court overruled his objection to the Commonwealth's proposed testimony concerning a visibility/identification experiment conducted by Sergeant Michael Ryan and Lieutenant Thomas Grady. Appellant argues that Sergeant Ryan's testimony regarding the visibility/identification experiment was irrelevant and prejudicial, and thus the trial court erred when it denied his motion for a mistrial. We do not agree.

On the first day of trial, Friday, November 2, 1984, the principal Commonwealth witness, Fay Shaw, testified during direct and redirect examination that between 9:30 p.m. and 9:45 p.m. on March 19, 1978, she witnessed appellant and Truesdale stab Melvin Fields in front of 1904 Napa Street from her porch at 3102 Berks Street. She testified that she had known appellant for six or seven years before the incident. She stated that as she was standing at 31st and Berks, she looked across the street and watched appellant and Truesdale punching another man for about five minutes, and that after the man fell down, appellant and Truesdale ran to the end of Napa Street. They stopped at the corner of Napa and Berks Streets and then turned back to where Fields was lying. When they returned to Fields, they bent over him holding a 'shiny object' which looked like a knife and struck him in the chest area about two or three times in an up and down motion. Ms. Shaw was unable to see which of the two, appellant or Truesdale, held the knife. Ms. Shaw stated that after the stabbing, the two men ran away together. Throughout the entire incident, Ms. Shaw was standing on her front porch at 31st and Berks. (N.T. 11/2/84 at 73–80, 120).

Ms. Shaw was questioned extensively by counsel for appellant and counsel for co-defendant Truesdale during cross and re-cross examination about her ability to see the incident, as well as the alleged impairment of her ability to see and to recollect the incident due to her acknowledged consumption of beer and marijuana prior to the incident. Ms. Shaw was questioned specifically about: the weather conditions on the night of the incident; the lighting of the area in which the incident occurred; how many other people were present in the area during and after the incident occurred; whether appellant or Truesdale had a beard, a mustache or sideburns; whether appellant or Truesdale were wearing glasses, hats, sneakers or shoes; whether appellant or Truesdale were wearing coats and, if so, what color were the coats; whether Fields was lying on the street, the pavement or the steps; whether she could see him lying on the pavement; whether it was possible to see the incident from where she stood; whether appellant or Truesdale held the knife; how recently she had seen appellant prior to the incident; how could she tell the assailant was appellant and not another black man; and whether she was positive about what she saw.[2] *See generally* N.T. 11/2/84 at 95–119.

On Monday, November 5, 1984, the second day of trial, the Commonwealth called Police Sergeant Michael Ryan to testify. The defense promptly requested an offer of proof to which the prosecutor responded:

> Your Honor, Sergeant Ryan has no real connection with this case other than he was available Saturday night to go out to the scene and to look from 3102 Berks to 1904 Napa, and he will testify that he did that, and he was able to see and distinguish faces from that distance.

(N.T. 11/5/84 at 11). The defense objected stating that the proposed testimony was irrelevant and prejudicial. The trial court overruled the objection and the defense made a

---

2. Both attorneys questioned Ms. Shaw on how she could be so positive about what she saw and yet not remember anything else, *i.e.*, who held the knife, etc. (N.T. 11/2/84 at 98, 112).

motion for a mistrial which was denied. (N.T. 11/5/84 at 11–13).

Police Sergeant Michael Ryan testified that on November 4, 1984, at approximately 1:30 a.m., he accompanied Police Lieutenant Thomas Grady to the crime scene; that he stood on the porch of the house at 3102 Berks while Lieutenant Grady went to an address on Napa Street; that from that distance he was able to see and to distinguish Lieutenant Grady's face; that Lieutenant Grady also stood at the corner of 31st and Napa Streets and that he was able to see and to distinguish Lieutenant Grady's face from that distance. In addition, Sergeant Ryan stated that from 3102 Berks Street, he could see the sidewalk in front of 1904 Napa Street. (N.T. 11/5/84 at 14–16).

Sergeant Ryan was cross-examined by counsel for appellant and counsel for co-defendant Truesdale. The testimony elicited during cross-examination highlighted the differences between Sergeant Ryan and Ms. Shaw. Sergeant Ryan was questioned about whether he had been at the scene of the murder on the night of March 19, 1978; whether he had consumed any alcoholic beverages or marijuana on the night the visibility/identification experiment was conducted; whether he knew about the murder and the trial prior to visiting the scene of the murder; and what his height was. (N.T. 11/5/84 at 17–19).

Initially, we note that a motion for a mistrial is addressed to the discretion of the trial court and will not be reversed absent an abuse of discretion. *Commonwealth v. Duffey*, 519 Pa. 348, 548 A.2d 1178 (1988). We find no abuse of discretion. We recognize, however, the true essence of appellant's contention is that the trial court abused its discretion by admitting, over objection, the testimony of Sergeant Ryan concerning the visibility/identification experiment. The admissibility of evidence is, likewise, a matter left to the sound discretion of the trial court and may only be reversed on appeal upon a showing that the trial court abused its discretion. *Commonwealth v. Osborn*, 364 Pa.Super. 505, 516, 528 A.2d 623, 629 (1987). " [A]n abuse

of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will as shown on the record, discretion is abused.'" *Commonwealth v. Grove,* 363 Pa.Super. 328, 346, 526 A.2d 369, 378 (1987), *quoting Commonwealth v. Moyer,* 497 Pa. 643, 647, 444 A.2d 101, 102 (1982).

▮ The basic requisite for the admissibility of any evidence in a criminal case is that it be competent and relevant. *Commonwealth v. Potts,* 314 Pa.Super. 256, 275, 460 A.2d 1127, 1137 (1983). Though "relevance" has not been precisely or universally defined, the courts of this Commonwealth have repeatedly stated that evidence is admissible if, and only if, the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact. *Commonwealth v. Potts, supra,* 314 Pa.Superior Ct. at 276, 460 A.2d at 1137; *see also Commonwealth v. Doe,* 316 Pa.Super. 1, 7, 462 A.2d 762, 765 (1983).

▮ The decision whether or not to admit evidence which, though relevant, is merely corroborative of other substantive evidence requires a balancing test. Corroborative evidence may be excluded if its probative value is outweighed by its potential prejudicial effect, *i.e.,* confusion of issues, undue delay, needless repetition of cumulative evidence, or tendency to inflame or incite prejudice or bias. When the testimony of a key eyewitness has been impeached, the probative value of corroborative evidence may outweigh potential prejudicial effects; however, corroborative evidence in such cases must be related to the impeachment which it is to deny, rebut or explain. *Commonwealth v. Fisher,* 447 Pa. 405, 290 A.2d 262 (1972). Moreover, while corroborative evidence may be admitted for rehabilitative purposes, the use of such evidence may not violate any

of the other exclusionary rules of evidence. *Commonwealth v. Fisher, supra.*

The corroborative evidence offered to rehabilitate the key eyewitness in the instant case involved the results of an experiment. The decision to admit the results of experiments, like the decision to admit other forms of evidence, is ordinarily one for the trial court's discretion, reviewable only for an abuse of discretion. *Commonwealth v. Sero,* 478 Pa. 440, 449, 387 A.2d 63, 68 (1978). "Authority is unanimous that test results of experiments are admissible if the conditions under which the experiment was conducted are 'substantially similar' to the conditions involved in the commission of the crime; to attain identical conditions is often impossible." *Commonwealth v. Sero, supra,* 478 Pa. at 449–450, 387 A.2d at 68 (results of a neutron activation tests on scarf worn by victim introduced to discredit defendant's version of the shooting held admissible).

■ The requirement of similarity of conditions is a relative one: "[p]erfect identity between experimental and actual conditions is neither attainable nor required.... [d]issimilarities affect the weight of the evidence, not admissibility." *Ramseyer v. GM Corp.,* 417 F.2d 859, 864 (8th Cir.1969). Thus, the general rule regarding corroboration by results of experiments is that unless some other exclusionary rule is violated, the results of experiments may be admitted into evidence when the circumstances under which the experiment was performed were sufficiently similar to the event in question to throw light on a material point in controversy and to assist the jury in arriving at the truth rather than to confuse the jury, inflame passions or prejudices, or unnecessarily delay proceedings.

■ In the instant case, the Commonwealth witness testified that she witnessed the murder of Melvin Fields at 1904 Napa Street as she stood on her porch at 3102 Berks Street. The defense attempted during cross-examination to impeach her by extensively questioning her ability to make a positive identification of the assailants from the distance indicated under the circumstances present. Thus, whether a person

could see and distinguish faces from where the witness stood was a fact specifically placed in issue by the appellant. Sergeant Ryan's testimony as to visibility was therefore relevant because it made a fact in issue, *i.e.* the credibility of the eyewitness' identification of the assailants from the distance indicated, more probable.

The conditions between the actual occurrence and the experiment were sufficiently similar to warrant admissibility. Sergeant Ryan stood in the eyewitness' position as Lieutenant Grady stood in the appellant's position. Appellant was permitted unbridled cross-examination of Sergeant Ryan wherein counsel carefully brought out the differences between Sergeant Ryan and the Commonwealth witness. The extent to which the experiment may have deviated from the actual conditions was a consideration for the jury in determining the weight to be accorded the experiment results and not a bar to its admissibility so long as the differences did not render the results of the experiment more confusing or misleading than probative. The trial court found the similarities sufficient to warrant admission despite the differences, and we find no abuse of discretion in this respect.

We note similarity between this case and *Howser v. Commonwealth,* 51 Pa. 332 (1865). In *Howser,* a witness testified that he had overheard a conversation between the appellant and his co-defendant who were in an adjoining cell while all three were in prison. The witness testified that the appellant and his co-defendant discussed their plan to murder and to rob the victim after they were discharged from prison. He testified further that he had subsequently demonstrated to visitors how a conversation in one cell could be heard and understood by a prisoner in an adjoining cell. This testimony concerning the audibility experiment conducted by the witness was deemed admissible corroborative evidence by our Supreme Court.[3] Later, in *Common-*

3. Howser had objected to this testimony on the grounds that corroborative evidence was not admissible because the witness had not been impeached. Our Supreme Court held, however, that while the witness had not been formally impeached, he testified "under circumstances

*wealth v. Wilson,* 394 Pa. 588, 148 A.2d 234 (1959), our Supreme Court commented on the audibility experiment testimony in *Howser,* as follows:

It was very proper, therefore, to corroborate him, and surely if he could demonstrate to his visitors that communication between cells was possible, he had a right to prove the fact in corroboration of his statement that such communications had actually taken place.

148 A.2d at 242–243. A like result obtains in the instant case.

We find no abuse of discretion by the trial court in refusing to declare a mistrial, as it was entirely proper under the circumstances of this case for the trial court to permit Sergeant Ryan to testify to the results of the visibility/identification experiment conducted. Appellant's first contention, therefore, is found to be without merit.

## II. JURY CHARGE

■ Appellant's second contention is that the trial court erred in its jury instructions concerning accomplice liability. Appellant contends that the trial court's instructions were improper and denied him a fair trial. As a result of the trial court's instructions, appellant alleges, the jury was permitted to find him guilty, not because he acted as the accomplice of the co-defendant, but because he acted as an accomplice of a third person or because a third person acted as his accomplice. Because the evidence presented by the Commonwealth did not support the inference alleged to have been suggested by the jury instructions, appellant argues that he is entitled to a new trial. We do not agree.

Our standard of review is well-settled. *See Commonwealth v. Alvin,* 357 Pa.Super. 509, 516 A.2d 376 (1986). Having reviewed the jury instructions in entirety, we find that they adequately set forth the law with regard to accomplice liability. *See* N.T. 11/8/84 at 102–104; *see also* 18 Pa.C.S.A. § 306. While the evidence at trial established

that tended strongly to discredit him" because he was a pardoned convict. *Commonwealth v. Howser,* 51 Pa. at 340.

that the criminal act was committed by appellant and his co-defendant, it was not apparent which defendant actually stabbed the victim to death. Thus, the Commonwealth's evidence supported the inference suggested by the accomplice liability instructions. We find the instructions given were appropriate, correct, and complete. Appellant's second contention is without merit.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Next, we consider appellant's two claims of ineffective assistance of counsel. Counsel is presumed competent and the burden is upon the appellant to establish ineffectiveness. *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802 (1985). In order to establish ineffectiveness, appellant must establish that: an act or omission by counsel was arguably ineffective; no objectively reasonable basis designed to effectuate appellant's interest could exist for the act or omission; and, but for the act or omission challenged there is a reasonable probability that the result would have been more favorable to appellant. *See Commonwealth v. Carelli*, 377 Pa.Super. 117, 546 A.2d 1185 (1988); *Commonwealth v. Petras*, 368 Pa.Super. 372, 534 A.2d 483 (1987); *cf. Kitrell v. Dakota*, 373 Pa.Super. 66, 540 A.2d 301 (1988). When the underlying claim lacks merit, the ineffectiveness claim must fail. *Id.*

### A. PROSECUTORIAL MISCONDUCT

■ Appellant contends that trial counsel rendered ineffective assistance of counsel when he failed to object to instances of prosecutorial misconduct and failed to raise this issue in post-trial motions. Appellant alleges that the prosecutor committed prosecutorial misconduct during his summation by misstating the law and by improperly commenting on the need for law and order. We do not agree.

With regard to the prosecutor's closing argument, a new trial is required only when a prosecutor's improper remarks are prejudicial, *i.e.,* when they are of such a nature or delivered in such a manner that they may reasonably be

said to have deprived the defendant of a fair and impartial trial. *Commonwealth v. Howard*, 375 Pa.Super. 43, 543 A.2d 1169 (1988). In *Commonwealth v. Johnson*, 516 Pa. 527, 533 A.2d 994 (1987), the Pennsylvania Supreme Court reaffirmed the use of the "unavoidable prejudice test" as articulated in *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975) to determine the impact of prejudice in closing arguments.

We have reviewed the prosecutor's closing argument as a whole, while keeping in mind the "unavoidable prejudice test." We do not find, nor has appellant demonstrated, that the prosecutor's allegedly objectionable closing remarks individually or collectively created such bias and hostility toward appellant in the minds of the jury that a true verdict could not be reached. Hence, there was no reason for trial counsel to object to the prosecutor's closing argument, or to raise this issue in the post-trial motions.

### B. ALIBI WITNESSES

Appellant next contends that trial counsel was ineffective when he failed to call alibi witnesses at trial. On October 18, 1984, trial counsel filed a Notice of Alibi with the names and addresses of four witnesses. At trial, none of those witnesses were presented on appellant's behalf. Appellant claims that because trial counsel made identification an issue at trial, the presentation of an alibi defense would have been consistent with the strategy pursued by trial counsel at trial and therefore counsel was ineffective in failing to present the alibi witnesses. We do not agree.

The failure to call a possible witness is not *per se* ineffectiveness absent some positive demonstration that the testimony would have been helpful to the defense. *Commonwealth v. Bulard*, 305 Pa.Super. 502, 451 A.2d 760 (1982). The decision whether to call a witness generally involves a matter of trial strategy. *Commonwealth v. Smallwood*, 497 Pa. 476, 442 A.2d 222 (1982). A defendant is not entitled to relief simply because the strategy was unsuccessful. *Commonwealth v. Gaerttner*, 335 Pa.Super.

203, 484 A.2d 92 (1984). Rather, appellant is required to establish the following to obtain relief on such a claim:

1) the witness existed; 2) the witness was available; 3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; 4) the witness was prepared to cooperate and testify for appellant at trial; and 5) the absence of the testimony prejudiced appellant so as to deny him a fair trial.

*Commonwealth v. Petras, supra,* 534 A.2d at 485. Appellant has failed to meet these requirements.

Appellant has provided the names and addresses of the four alleged alibi witnesses. It appears that three of the four are related to appellant and one, Joanne Davis, resided with appellant.[4] The affidavit of Joanne Davis was attached to appellant's brief. In her affidavit, Ms. Davis alleges that she was available to testify at trial that on March 19, 1978, between 9:30 p.m. and 9:45 p.m., appellant was inside his residence. Appellant has failed to attach the affidavits of the remaining three witnesses. Thus, he has failed to establish that they were available, willing to testify, and could have provided material evidence.

We must determine, therefore, whether trial counsel's strategy, which did not include calling Ms. Davis, had an objectively reasonable basis. Upon review of the record, it is apparent that trial counsel chose to emphasize the Commonwealth's failure to meet its burden of proving guilt beyond a reasonable doubt, rather than attempt the more difficult task of establishing an alibi defense. Trial counsel extensively cross-examined the Commonwealth witnesses, especially the sole eyewitness, Ms. Shaw. Trial counsel concentrated on Ms. Shaw's admitted impairment due to her consumption of alcohol and marijuana, and her purported ability to recognize the appellant despite her inability to identify which assailant was the murderer. (N.T. 11/2/84 at 105–119). By calling an alibi witness, trial counsel would

4. Appellant lived with his mother at 1926 North 32nd Street in Philadelphia. It is not clear who else resided with him, hence Joanne Davis could be appellant's mother.

have risked a shift in focus from the credibility of the Commonwealth's witness to that of the alibi witness. If successfully impeached, the alibi witness could have done more harm than good to the defense. There was also a risk that the alibi witness might volunteer evidence of appellant's good character and thereby open the door to admission of particularly damaging and otherwise inadmissible evidence. Moreover, even unimpeached, alibi evidence would have been of limited value as it would have been coming from a person sharing the same residence with appellant, and would have been limited to an assertion that, during the relevant fifteen minute period, appellant was in a house close to the scene of the incident, apparently, alone with the alibi witness. The decision of whether to call an alibi witness under such circumstances is obviously a matter of trial tactics not subject to a challenge on ineffectiveness grounds after the fact.

Moreover, if appellant had been dissatisfied with trial counsel's strategy at trial, he could have brought the matter to the trial judge's attention. Our review of the record does not reveal any objection made by appellant concerning trial counsel's decision not to call the four alibi witnesses. Additionally, we note that the alibi testimony presented by appellant's co-defendant was similar to the alibi testimony that appellant's counsel chose not to introduce.[5] The jury found both trial tactics unpersuasive, and convicted both appellant and Truesdale.

Our review of the entire record reveals that there was an objectively reasonable basis for the strategy employed at trial. Moreover, we are of the opinion that even if the evidence had been presented, there is no reasonable likelihood that the verdict would have been more favorable to appellant. Appellant's claims of ineffectiveness of counsel, therefore, are found to be without merit.

**5.** Willie Truesdale's younger sister testified adamantly that her brother was with her during the time of the murder. (N.T. 11/7/84 at 6–8, 32–39).

## CONCLUSION

Based upon the foregoing, judgment of sentence is affirmed.