599 A.2d 1340

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**James C. SMITH.**

Superior Court of Pennsylvania.

Argued Aug. 28, 1991.

Filed Nov. 27, 1991.

Frances Gerson, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Bruce A. Franzel, Philadelphia, for appellee.

Before DEL SOLE, TAMILIA and HOFFMAN, JJ.

TAMILIA, Judge:

The Commonwealth takes this appeal from the Order of October 25, 1990 granting defendant James C. Smith's motion for a new trial after the trial court overturned a pretrial Order excluding evidence under the rape shield statute.[1]

Defendant was charged with rape [2] and related offenses [3] for engaging in sexual contact and intercourse with the 13 year old victim. Although the victim testified the sexual contact occurred over a two year period when the victim was between the ages of 11 and 13, defendant was only charged in connection with crimes committed between November, 1988 and December, 1988, when the victim was 13. Defendant had lived with the victim's mother previously,

[1]. 18 Pa.C.S. § 3104.

[2]. *Id.*, § 3121.

[3]. Statutory rape, involuntary deviate sexual intercourse, indecent assault, indecent exposure, simple assault and corruption of a minor.

and the victim and her brother called him "Dad." The victim's grandmother allowed the victim's brother to live with defendant to get him out of their South Philadelphia housing project and into a better school and the victim was also allowed to spend weekends at defendant's house. It was during these visits defendant began sexually assaulting the victim. Eventually, on December 31, 1988, the victim's brother, who had become aware of defendant's actions, through his own observation and what his sister told him, informed his grandmother of what defendant had been doing to the victim. The grandmother called the Department of Human Services (DHS), who notified police. However, because the victim desired to protect defendant, and because other family members and defendant told her not to tell, the victim and her brother did not tell the police defendant had intercourse with her, but only that defendant had oral sex with her. Three weeks later, DHS took the victim to the hospital to be examined and, inexplicably, a Johnson Rape Kit test was taken, even though many weeks had passed since the last sexual assault.[4] The test was positive for the presence of sperm.[5] On the way home from the hospital, the victim revealed to her grandmother for the first time defendant had had vaginal and anal intercourse with her on numerous occasions, as well as performing oral sex on her.

At the preliminary hearing, the victim testified as to the extent of defendant's assaults, including the acts of intercourse. Prior to trial, the Commonwealth presented before the Honorable Jane C. Greenspan a motion in limine to preclude defendant's introduction of the rape kit results.

---

**4.** Although no reason was given, the Commonwealth is of the opinion the test was performed mistakenly by the examining physician, who thought the victim was there as the result of a rape that had just occurred. (Brief of Appellant, p. 5; N.T. 11/2/89, pp. 5–6.)

**5.** Although it was agreed by the parties the sperm found was not defendant's, it is not clear whether this agreement was derived from the length of time since defendant's last assault, or, as stated by the Commonwealth, from the results of a subsequent analysis of the sperm sample. Further, it is also unclear who was aware of these results, especially the victim or her grandmother.

Defendant argued the results of the rape kit test were relevant to the issues of the victim's unrelated sexual activity and to attack her credibility because of her denials, prior to the preliminary hearing, that she and defendant had had intercourse. The motion court ruled evidence of the victim's later sexual contact with another was not directly relevant to whether defendant had had intercourse with her in the time frame alleged, and defendant had ample means to discredit the victim over the discrepancies between her initial allegations and her subsequent testimony without resorting to the rape kit results. Based on the rape shield statute, therefore, the motion court barred introduction of the evidence. Defendant proceeded to a nonjury trial before the Honorable Arthur S. Kafrissen, Municipal Court judge sitting by designation in the Court of Common Pleas, and was found guilty of statutory rape, involuntary deviate sexual intercourse, indecent assault, indecent exposure and corruption of a minor, but not guilty of rape and simple assault.

Following briefs and oral argument on defendant's post-verdict motions for a new trial and in arrest of judgment, the trial court denied defendant's motion in arrest of judgment but granted the motion for a new trial on the basis that the rape kit test results were relevant and admissible for the limited purpose of explaining the victim's motive in naming defendant and did not in any way embarrass the victim or tend to make the rape shield law less effective (N.T., 10/25/90, pp. 5–6). This appeal followed.

On appeal, the Commonwealth argues separate procedural, substantive and policy issues in which it contends the trial court erred and which require reversal by this Court. In effect, this Court is again called upon to determine the scope of Pennsylvania's rape shield law. The statute provides:

### § 3104. Evidence of victim's sexual conduct

(a) **General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputa-

tion evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

**(b) Evidentiary proceedings.**—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S. § 3104.

█ At common law, and to some extent even today, a rape victim often suffered secondary abuse at the hands of the judicial system through aggressive defense counsel who "essentially put the victim on trial." In response to these abuses, the federal government and the states enacted rape shield laws which "were intended to end the abuses ... by limiting the harassing and embarrassing inquires [sic] of defense counsel into irrelevant prior sexual conduct of sexual assault complainants." *Commonwealth v. Nieves*, 399 Pa.Super. 277, 286, 582 A.2d 341, 346 (1990) (citations omitted). The rape shield statute "is a bar to admission of testimony of prior sexual conduct involving a victim, whether it is consensual or the result of nonconsensual or assaultive behavior, *unless it has probative value which is exculpatory to the defendant.*" *Commonwealth v. Johnson*, 389 Pa.Super. 184, 195–196, 566 A.2d 1197, 1202 (1989), *allocatur granted*, 525 Pa. 643, 581 A.2d 569 (1990) (emphasis added). To that end, limited exceptions to the broad exclusion of the rape shield law have arisen to demonstrate the rape shield law "will bow to a defendant's right to confront and cross-examine when a specific proffer demon-

strates that the proposed inquiry is intended to elicit relevant evidence, which is more probative than prejudicial, and which is not cumulative of other evidence available without encroaching upon Rape Shield law protections." *Nieves, supra* at 288, 582 A.2d at 347; *see Commonwealth v. Majorana*, 503 Pa. 602, 470 A.2d 80 (1983); *Commonwealth v. Lyons*, 364 Pa.Super. 620, 528 A.2d 975 (1987); *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985). However, in order for a defendant to invoke one of the limited exceptions to the broad exclusions of the shield law, an adequate, specific offer of proof must be made and the absence thereof is fatal to a defendant's challenge to the rape shield law. *Nieves, supra; see Commonwealth v. Troy*, 381 Pa.Super. 326, 553 A.2d 992 (1989).

■ In this case, the Commonwealth claims defendant's offer of proof was inadequate to meet the requirements of *Nieves* and *Troy* for relevance, probativeness and necessity. During the hearing on the Commonwealth's motion in limine, the following exchange occurred between defense counsel and the court in regard to the admission of the rape kit results:

MR. FRANZEL [defense counsel]: On the issue of credibility and the relevance of this test to credibility, it goes beyond that. The Complainant consistently has maintained to the police, in the police reports, that she never had intercourse with the Defendant.

At the preliminary hearing, for the first time, she said that there was intercourse with the Defendant. In fact, in the hospital reports—

THE COURT: Why was this a rape, if she continually said that she didn't have intercourse with the Defendant? Why did they arrest him if—

MR. FRANZEL: The charges are Indecent Assault and Involuntary Deviate Sexual Intercourse.

On the hospital records, it says, "Denies any intercourse." So, it goes to the credibility of this witness. I think that all of this is part of the whole factual underpin-

ning of the case, touching on the credibility of this witness.

THE COURT: Any of that evidence goes to the credibility of the complaining witness, but there is a protection, under the Rape Shield Law, that overrides that, which has been upheld time and time again.

I need to see the difference here....

(N.T., 11/2/89, pp. 6–7.)

Defendant maintains this exchange was sufficient to breach the rape shield protection, even though defendant did not then, or at any other time in the hearing, make the specific argument he now makes, namely, that the victim never accused defendant of raping her prior to learning the results of the rape kit, but did so later to avoid her grandmother's possible anger upon discovering the victim had had sexual intercourse with someone. In support of this argument, defendant relied upon this Court's decision in *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985), a rationale adopted by the trial court in awarding defendant a new trial. We find merit in the Commonwealth's claim the trial court erred in this regard.

In *Black*, the defendant's daughter accused him of rape. The defendant then offered testimony of his daughter's consensual sexual relationship with her brother, who had been thrown out of the family home shortly before the daughter brought the charges against the defendant. The defendant offered this testimony to demonstrate a specific motive or bias for the daughter to make false allegations. This Court found the rape shield law may not be used to exclude relevant evidence attacking credibility or showing a witness' bias. *Id.*, 337 Pa.Superior Ct. at 557, 487 A.2d at 401. The holding in *Black*, however, should be viewed quite narrowly, as later cases have applied it "only where the victim's credibility was allegedly affected by *bias against or hostility toward the defendant*, or the victim had a motive to seek retribution." *Commonwealth v. Boyles*, 407

Pa.Super. 343, 356, 595 A.2d 1180, 1186 (1991) (emphasis added).

In this case, defendant, at the motion in limine, only made a general attack on the victim's credibility in not alleging intercourse with defendant earlier, which, as the hearing court noted correctly, could be made frequently were it not for the statutory protection of the shield law. Defendant only raised the issue of bias as it affected the victim's credibility upon the conclusion of the trial. For these reasons, we find defendant's claim procedurally defective, and we reverse the Order of the trial court granting a new trial. Were the facts of this case different, our discussion would cease at this point. In the interest of public policy, however, we also address the substantive claims raised by the Commonwealth, inasmuch as they involve other important issues within the ambit of the rape shield law.

■ As discussed *infra*, evidence sought to be admitted over the broad exclusion of the rape shield law must be analyzed in light of three factors: (1) its relevance to attack credibility or show bias; (2) its probative value versus its prejudicial effect; and (3) whether alternative means exist to attack credibility or show bias. *Black, supra; Nieves, supra.* Evidence is relevant if it "logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. Davis*, 381 Pa.Super. 483, 491, 554 A.2d 104, 108 (1989).

■ We find the evidence sought to be admitted in this case of dubious relevance to attack the victim's credibility because we are unable to discern from the record before us any bias against or hostility toward the defendant on the part of the victim, as required to invoke the narrow holding of *Black* and skirt the rape shield law. *Boyles, supra.* To the contrary, the record indicates a close, almost paternal relationship between the victim and defendant prior to the assaults. The victim and her brother called defendant "Dad" and the victim was encouraged to visit him in order to get away from her housing project.

Defendant claims the victim, in fear of her grandmother's anger at learning that the test results were positive for the presence of sperm in the victim's vagina, and the grandmother's threat to place her in a "home" for being "bad," had reason to fabricate charges of sexual intercourse with defendant, rather than admit to having had consensual sexual intercourse with a third person. This argument fails for several reasons. First, we find no evidence the victim feared her grandmother's reaction to the extent she would allege rape. In addition, although the victim testified her grandmother warned her if she wasn't "good," she would place the victim in a shelter, the victim emphasized these warnings stemmed from the victim playing hookey from school and not from the sexual assaults (N.T., 11/2/89, pp. 66–70). Nor do we find the test results themselves dispositive in providing a motive for the victim to fabricate, because, as mentioned above (footnote 5), it is not at all clear upon what basis the parties were able to agree the sperm found was not defendant's. More importantly, whether the victim or her grandmother knew of the results, we do not find sufficient bias to make the test results relevant and admissible. It is not unlikely that the child felt a degree of guilt in consenting to vaginal intercourse that was not present in acknowledging oral intercourse, and she admitted its occurrence with the appellant only upon being confronted with proof of vaginal intercourse following the test. The fact she did not accuse appellant of this action is more indicative of a lack of bias against him as she had the opportunity to name him as the perpetrator but did not do so.

As to the second factor in *Black*, we find little probative value in the test results, and, therefore, the evidence clearly is outweighed by its prejudicial effect.

[T]here is ... a persistent belief among some people that a woman or girl would not be assaulted unless she provoked the assault by acting promiscuously or deliberately placed herself in a situation where an assault could be anticipated. This is particularly so when the parties

are known to each other. We have not yet completely disabused the public mind of the perception that an assault victim is somehow to blame for the assault, and this is even more so with child victims who, due to naivete or poor supervision, find themselves unprotected and dangerously vulnerable.

*Johnson, supra,* 389 Pa.Superior Ct. at 188, 566 A.2d at 1199.

Finally, we find defendant had ample alternative means to attack the victim's credibility and develop his claim of bias without the Johnson Rape Kit results. Defendant was able to cross-examine the victim and attack her credibility through the use of her prior inconsistent statements to the police, her brother and her grandmother; through questioning directed at the suddenness of her allegation of rape after she went to the hospital; and through the use of the other hospital records that include her denial of sexual intercourse.

Were this Court to uphold the trial court's Order, replete as it is with inferences the victim falsely accused defendant of rape rather than face the opprobrium and ire of her grandmother for having had consensual sexual intercourse, we would effectively remove children from the protections of the rape shield law by finding child victims likely to cry "rape" when confronted by evidence of sexual activity, rather than deal with the possible anger of parents or guardians. We find no authority to allow such a weakening of the rape shield law. After careful review of the record and analysis of the rape shield law and cases interpreting it, we conclude the facts in this case do not warrant a deviation from the application of the law as the issue reduces itself simply to a consideration of whether other sexual conduct following the alleged rape, unconnected with appellant, is admissible as evidence. We conclude it is not.

Order reversed. Case remanded for sentencing.

Jurisdiction relinquished.

DEL SOLE, J., dissents.

DEL SOLE, Judge, dissenting:

I respectfully dissent from the majority's opinion reversing the trial court's order for a new trial and remanding for sentencing because I do not believe that the offer of proof made in the Motion in Limine was procedurally defective, and because I believe a hearing is required to determine the relevancy of the Johnson Rape Kit test results.

The Rape–Shield Law does not exclude relevant evidence showing the witness' motive or bias, or which attacks the witness' credibility. *Commonwealth v. Poindexter*, 372 Pa.Super. 566, 539 A.2d 1341 (1988), *citing, Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985) (en banc). In *Commonwealth v. Marjorana*, 503 Pa. 602, 470 A.2d 80 (1983), and *Commonwealth v. Lyons*, 364 Pa.Super. 620, 528 A.2d 975 (1987), we found that the court erred in excluding evidence of the complainant's sexual relations with another person. We held that this evidence was relevant to explain the presence of semen and sperm found in the complainant, *(Marjorana)* or blood on the child's panties, *(Lyons)*, and therefore, despite the protections of the Rape Shield Law, this evidence of prior sexual contact with a third party should have been admitted to prove an alternative cause or explanation for the presence of the physical evidence. These cases show that, contrary to the majority's holding, it is not only when the victim's credibility was allegedly affected by bias against or hostility toward the defendant that evidence of the witness' sexual conduct may be admitted over the protections of the Rape Shield Law.

Here, the defense argued during the Motion in Limine that it was not until the Johnson Rape Kit test had been performed that the complaining witness contended that she had had sexual intercourse with the defendant. She had consistently maintained, prior to that time, that she had not had intercourse with him. (N.T. at 6, 11/2/89). This offer of proof suggested that the results of the test were the motive for her changed allegations, and evidence of this motive should have been admitted as it affected her credibility. Thus, I would find that the offer of proof was suffi-

ciently specific relating to motive and credibility, and there was, therefore, no procedural defect in the proffer.

According to the reasoning found in the offer of proof, the test results are only relevant if they establish a motive for the complainant to lie. Defendant alleged that the complainant fabricated this new charge because she was afraid of what would happen if her grandmother knew she was having sexual relations with another person. He argues that she changed her story and claimed she had engaged in intercourse with defendant to provide an alternative explanation for the test results.

However, I believe we have insufficient information at this point to establish that the test results provide a possible explanation or motive for the change in her story. The Commonwealth agreed that the sperm that was in the complainant was not the sperm of the defendant. In fact, the complainant said that she did not have contact with defendant or even see him for well over a month prior to the administration of the Johnson Rape Kit. (N.T. at 3, 11/2/89)

This brings up the question of why the test was administered in the first place; medical professionals would certainly know that sperm will not be detected a month after intercourse has occurred, if this were indeed the last time there was any contact with defendant. But more importantly, even if the test was merely inadvertently administered, through bureaucratic error, we do not know if the complainant or her grandmother knew of the test results, which might cause her to fabricate the story.

We also do not know why or on what basis the Commonwealth agreed that it was not the defendant's sperm. Was a DNA analysis performed on the sperm, proving that it was not defendant's sperm, or are we simply assuming that the sperm was not defendant's without any factual basis for that assumption, apart from the Commonwealth's concession?

Moreover, we do not know whether the complainant or her grandmother knew or claimed to know, prior to changing her story, that the sperm found in complainant was not the defendant's sperm. If she and her grandmother knew or claimed to know it was not the defendant's sperm, then they knew that complainant was having sexual relations with another person. Then, by what logic would she believe that an accusation against the defendant would somehow help her to avoid the consequences of her grandmother's disapproval?

Given all these unanswered questions I do not believe that at this time the trial court can decide that the evidence of the test results is admissible as probative of the motive for the alleged fabrication. These areas need to be explored, and I would therefore remand for an *in camera* hearing similarly ordered in *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985), and *Commonwealth v. Johnson*, 389 Pa.Super. 184, 566 A.2d 1197 (1989).

We stated in *Black, supra.*, at 337 Pa.Super. at 557, 487 A.2d 396:

While we hold that Pennsylvania's Rape Shield Law may not be used to exclude relevant evidence showing witness' bias or attacking credibility, we do not hold that material evidence is necessarily admissible. Although logically relevant, evidence tending to show the victim's prejudice or lack of credibility may be excluded if 'it would so inflame the minds of the jurors that its probative value is outweighed by unfair prejudice.' [citations omitted] This balancing determination between probative value and unfair prejudice should be made by the trial court at an *in camera* hearing ... At this hearing, the trial court should determine the following as a matter of record to be preserved for appellate review: (1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive or to challenge credibility.

Therefore, I would remand for an *in camera* hearing, first to resolve these questions, and then to do the necessary balancing mandated by *Black*.