## Commonwealth v. Khan

240

*Martin J. Duvall,* for Commonwealth.
*Michael A. George,* for defendant.

KUHN, *J.,* October 31, 1994—On May 13, 1993, a jury found defendant guilty in CC-684-92 of two counts of indecent assault (Count II and III—18 Pa.C.S. §312(a)(1) and (3) respectively) for an incident involving Jill Tomlinson on March 27, 1992 and in CC-685-92 to two counts of rape (Count I and IV—18 Pa.C.S. §3121(3) and (1) respectively), and three counts of indecent assault (Count II, III and V—18 Pa.C.S. §3126(a)(1) and (3) respectively) for an incident with Riko Hayashi on August 27, 1992. Defendant filed timely post-verdict motions which are before the court for disposition.

Viewed in a light most favorable to the Commonwealth, the following background was developed at trial.

*CC-684-92*—On March 27, 1992, beginning at approximately 9 p.m. Jill Tomlinson, a student at Gettysburg College, attended a party at an Ice House apartment, occupied by defendant and others. Ms. Tomlinson admitted drinking for nearly two hours before attending the party and to being intoxicated. At the party she became ill after smoking some marijuana, and two attendees placed her on the living room couch and covered her with a blanket. Ms. Tomlinson next remembers hear-

ing her friend, Kim Rudnitsky, and awakened to find herself on the bathroom floor unclothed with defendant on top of her having sexual intercourse. She then gathered her clothes and returned to the couch. The following morning she reported the incident to some friends but did not notify the police until October 1992. The morning following the incident defendant admitted to his roommate to having sexual intercourse with Ms. Tomlinson.

*CC-685-92*—On August 27, 1992, Riko Hayashi, an international student from Japan who had just arrived at Gettysburg College four days before, was living at the Ice House Apartments. She had met defendant, a senior international student, at an orientation program. He invited Ms. Hayashi and others to a party at his apartment. Ms. Hayashi left the party about midnight but returned again after a call from defendant. She drank some beer and eventually fell asleep on the couch.

Ms. Hayashi next remembers waking up in defendant's bedroom unclothed with defendant on top of her having sexual intercourse. Despite Ms. Hayashi's protestations, defendant did not stop until he achieved an orgasm. Defendant left the bedroom while Ms. Hayashi searched for her clothing.

Upon defendant's return Ms. Hayashi asked him why he had done this to her. Defendant responded by touching her. Again, despite protestations defendant held her down, penetrated her and did not stop until achieving orgasm. Ms. Hayashi left when defendant fell asleep.

Ms. Hayashi reported the incident to another international student about one week later.

On October 15, 1992, a criminal complaint was filed against defendant regarding the Hayashi incident and on October 23, 1992, another one was filed regarding the Tomlinson incident. In addition, two criminal com-

plaints for sexual offenses were filed against defendant on October 15, 1992, and related to alleged incidents occurring on August 30 and 31, 1992, with Daniela Franciscus, another college student. These cases were eventually docketed at CC-682-92 and CC-683-92. On October 23, 1992, a criminal complaint was filed against defendant for an alleged rape involving Selam Demeke on June 27, 1992. This case was docketed at CC-686-92.

On January 12, 1993, the Commonwealth moved to consolidate for trial all of the above referenced cases. Defendant was not opposed to consolidation of CC-682-92 and CC-683-92. (See order of February 22, 1993.) By order of March 3, 1993, President Judge Oscar F. Spicer ordered consolidation of CC-684-92 and CC-685-92.

Defendant first argues that consolidation of CC-684-92 and CC-685-92 was improper. In his order dated February 22, 1993, Judge Spicer noted that the parties stipulated that he was to rely on the preliminary hearing transcript to decide the motion for consolidation. In his March 3, 1993, opinion Judge Spicer relied upon *Commonwealth v. Newman*, 528 Pa. 393, 598 A.2d 275 (1991) in granting the motion.

It is readily apparent why *Newman* is dispositive. In *Newman* the defendant was charged with two separate rapes occurring 18 months apart. Both involved female victims who received head injuries and were taken to the hospital where defendant worked as an x-ray technician. Defendant took each victim to an x-ray room with no other person present, requested them to disrobe, began fondling them and then raped each. The first victim did not report her incident to authorities until she learned of the second incident.

Consolidation is governed by Pa.R.Crim.P. 1127 which provides, in pertinent part:

"A. Standards

"(1) Offenses charged in separate indictments or informations may be tried together if:

"(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion."

This rule was adopted in response to the holding in *Commonwealth v. Morris*, 493 Pa. 164, 425 A.2d 715 (1981) which held that indictments may be consolidated where the separate offenses show the unusual or distinctive modus operandi of the defendant which means that the crimes are so nearly identical in method as to earmark them as the handiwork of the accused. *Id.* at 176, 425 A.2d at 720. The *Newman* court articulated that,

"In arriving at this standard, we weighed the possibility of prejudice to the defendant and/or the injustice caused by the consolidation against the consideration of judicial economy. In seeking consolidation of separate indictments, the Commonwealth is required to show more than that the crimes are of the same class. Rather, it must be shown that a high correlation in the details of the crimes exists such that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others....

"As this court noted in *Morris*, evidence of a distinct crime is inadmissible solely to show a defendant's propensity to commit a crime.... Evidence of other crimes is, however, admissible for certain purposes if the probative weight of the evidence outweighs any possible prejudice to the jury.... Accordingly, evidence of other crimes may be introduced for the limited purpose of showing ... (4) a common scheme, plan or design embracing commission of two or more crimes so related

to each other that proof of one tends to prove the others...." *Id.* at 399, 598 A.2d at 278.

In *Newman* the first part of Rule 1127(A)(1)(a), *i.e.* admissibility, was the commonality or the shared similarities in the details of the two rapes. Factors considered relevant were the roles, the situs, the conditions of the females, and the conduct of the defendant. A lapse of 18 months did not render consolidation improper.

In the case sub judice the similarities were likewise significant. Both events took place in defendant's apartment after the victims had passed out from consuming alcohol. Each one was removed to a location in the apartment which was isolated from others (the bathroom and bedroom) and each victim awoke with defendant on top of her engaging in sexual intercourse. Each victim barely knew defendant.

While there are certainly differences in the two incidents, as defendant has articulated, they serve not to disprove the first prong of Rule 1127 but to satisfy the second prong which requires that the cases be capable of separation by a jury so there was no danger of confusion. The instant cases are easily distinguishable.

The time between the incidents of five months was not dispositive in this case. The first incident occurred approximately two months before the end of the 1991-92 school year while the second incident occurred at the very beginning of the 1992-93 school year. One can discount the summer school vacation time as a period when defendant's access to intoxicated and vulnerable college co-eds was significantly diminished or eliminated.

The final prong of the *Newman* test is to determine whether the danger of prejudice to defendant outweighs the benefit of consolidation. Pa R.Crim.P. 1128 authorizes severance "if it appears that any party may be

prejudiced by offenses or defendants being tried together." The prejudice being referenced according to *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491 (1988) is "that which would occur if the evidence tended to convict appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence." *Id.* at 307-8, 543 A.2d at 499.

Defendant claims that he was prejudiced in his ability to present a defense. He suggested some interest in testifying in one case (possibly CC-685-92) but not the other. He argues that he decided not to testify as to either incident rather than risk a negative perception if he testified as to one incident but not the other.

One of the concerns raised in opposition to consolidation is the possible prejudice which may result if a defendant is confounded in presenting defenses, as where a defense to one case is inconsistent with a defense in another case. *Commonwealth v. Morris*, *supra* at 171, 425 A.2d at 718. Defendant must, however, show a real potential for prejudice and not mere speculation. *Commonwealth v. Patterson*, 519 Pa. 190, 197, 546 A.2d 596, 599 (1988). Defendant in this case did not raise the issue of conflicting defense strategies at the pre-trial hearing nor at trial. The concern to defendant was trial strategy, not prejudice. He has made no offer regarding the nature of the testimony he was precluded from presenting other than the subsequent nature of the relationship between Hayashi and himself. However, he was able to secure significant favorable testimony regarding that relationship from Hayashi and other witnesses.

We conclude that consolidation in this case was not an abuse of discretion.

Second, defendant contends that a response given by Commonwealth witness, Eun Sung Kim, entitles him to a new trial because she made improper reference to other unrelated criminal activity. Ms. Kim, a first year international student at Gettysburg College, was called to corroborate Ms. Hayashi's testimony about the party and to relate when Ms. Hayashi reported the incident to her. On cross-examination Ms. Kim responded that Ms. Hayashi did not want to press charges against defendant. On re-direct the following discussion occurred.

"Q. How was it that you two were talking about whether or not she wanted to go forward and file charges? What was the context in which you had that discussion?

"A. I don't remember quite well about context because I just remember she didn't was [sic] to press charges but later she decided to press charges after knowing that other girls were raped." (T. 228.)

Defense counsel immediately objected, asked that the answer be stricken and that a cautionary instruction be given. The court instructed the jury to "disregard the last response. It wasn't exactly responsive to the question and is not relevant to the charge for which we're here today." Defendant then moved for a mistrial. The court recognized that a more thorough cautionary instruction would only serve to emphasize the possibility that defendant was involved in rape incidents not being presented to the jury. The motion was denied.

The general rule in this area was recently set forth in *Commonwealth v. Vazquez,* 421 Pa. Super. 184, 617 A.2d 786 (1992).

"It is well-settled that evidence of crimes unrelated to the charge for which a defendant is being tried is generally inadmissible ... However, not all improper references to prior criminal acts require the award of

a new trial. The decision of whether to declare a mistrial in a criminal prosecution is within the sound discretion of the trial court.... Moreover ... the extreme remedy of a mistrial is not automatically required if it is determined that the inference of prior criminality was innocuous and that effective curative instructions were immediately given ... Indeed, a mistrial must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial ... Consideration of all the circumstances is necessary in determining whether an instruction can cure the exposure of improper evidence to the jury ... Among the circumstances to be considered are whether the remark was intentionally elicited by the Commonwealth, whether the Commonwealth exploited the reference, whether the answer is responsive to the question asked, and whether curative instructions given were significant...." *Id.* at 186-87, 617 A.2d at 787-88.

See also, *Commonwealth v. Bonace*, 391 Pa. Super. 602, 608-9, 571 A.2d 1079, 1082 (1990), *alloc. denied*, 526 Pa. 647, 585 A.2d 466 (1990).

Although this may be a close case we nevertheless believe that continuing with the trial was not an abuse. We must recall that defendant first raised the issue about Ms. Hayashi's reluctance to pursue the charges. The Commonwealth tried to establish the context within which Ms. Hayashi told Ms. Kim she was hesitant to proceed. The answer given regarding "other girls" being raped was not exactly responsive and was not specifically elicited by the Commonwealth. Furthermore the Commonwealth did not exploit the answer. The court gave an immediate cautionary instruction for the jury to disregard the answer. We also note that Ms. Kim did not say defendant raped other girls. In the context of this case the statement was rather innocuous

and did not necessarily convey to the jury that defendant was involved in any incidents except those for which he was on trial.

Third, defendant argues that the prosecutor made an improper argument during her closing regarding Ms. Hayashi's sexual propensities. The closing was not transcribed, however, there seems to be consensus that the prosecutor posed the question whether Ms. Hayashi appeared "to be the type of woman who would jump in the sack with the first man she met after getting off the boat" from Japan. This query was posed in response to the defense of consensual intercourse. Defense counsel requested an instruction that he was precluded from introducing evidence as to Ms. Hayashi's sexual propensities. This request was refused.

Defendant contends that the Rape Shield Law, 18 Pa.C.S. §3104(a) precluded him from inquiring into Ms. Hayashi's sexual propensities, therefore, any argument regarding those propensities is argument based upon facts or inferences not in evidence and which were legally excluded. We agree that the Rape Shield Law would prevent inquiry on the issue. We further agree that it is improper for the prosecutor to draw an adverse inference from the absence of evidence excluded from the trial. *Commonwealth v. Wall*, 413 Pa. Super. 599, 625-27 n.21, 606 A.2d 449, 463 n.21 (1992), *alloc. denied*, 532 Pa. 645, 614 A.2d 1142 (1992).

At the time of closing arguments the undersigned felt the prosecutor's reference was a comment upon Ms. Hayashi's demeanor during trial and her credibility. Ms. Hayashi claimed that the sexual intercourse was not consensual. One's demeanor on the witness stand is certainly a factor which can be used in determining credibility. We do not find that in the context of this case the prosecutor's remark constituted reversible error.

Next, defendant argues that the court erred in failing to disqualify the Adams County District Attorney's Office from prosecuting this case. By way of background, on May 7, 1994, defendant filed a motion to disqualify alleging that the same day Attorney Robert McQuaide of the law firm of Swope, Heiser & McQuaide had entered an appearance on behalf of Gettysburg College to quash subpoenas sent to several members of the college staff. Roy Keefer is an associate in that law office and the district attorney. That request was denied.

Defendant claims that an impermissible conflict of interest existed in the prosecution of defendant. He alleges that the college suspended defendant as a student after charges were filed, collected statements from all victims and provided counseling services. He further alleges that the college had an interest in conviction in order to avoid litigation by the victims and attached to his brief a letter allegedly written by the father of Daniela Franciscus.

Defendant cites *Commonwealth v. Eskridge*, 529 Pa. 387, 604 A.2d 700 (1992) wherein our Supreme Court granted the defendant a new trial in a homicide by vehicle case because the district attorney's private practice law partners represented the victims civilly against the defendant. There, as here, the actual prosecution was delegated to an assistant district attorney. The court found a conflict because the district attorney had a direct financial interest in obtaining a conviction and held that where an actual conflict of interest exists a defendant need not show actual prejudice.

The instant case is clearly distinguishable. Here there is no clue that Mr. Keefer had a direct financial interest in a conviction. Mr. Keefer's office did not represent the victim. The only suggestion made is that his private law firm's client may avoid threatened litigation if de-

fendant was convicted. Even that connection is dubious in the above captioned cases because the alleged threats came from the father of a victim in a different case.[1] Because there is no actual conflict we believe that actual prejudice must be shown. No such prejudice has been shown here.

Fifth, defendant argues that the court erred in ruling that the Rape Shield Law prohibited inquiry into Ms. Tomlinson's sexual habits when she consumes large amounts of alcohol. On May 7, 1993, defendant filed a notice pursuant to the requirements of 18 Pa.C.S. §3104(b) to the effect that on one occasion in 1991, Ms. Tomlinson consumed a large amount of alcohol which created an alcoholic blackout during which she engaged in sexual intercourse causing her to become upset. The alleged purpose of the proffered testimony was 1) to explain why she was upset on the morning following the incident in March 1992, in this case in that it repeated her 1991 conduct, and 2) to show a history of alcoholic blackouts.

An in camera hearing was held on May 11, 1993. During that hearing Ms. Tomlinson admitted that on one occasion in September 1991, she consumed a large volume of alcohol and the following morning was unable to remember what she had done. She admitted to being vaginally sore the following morning but had no recollection of engaging in sexual intercourse. She did inquire of one male acquaintance if he had sex with her that night but he denied any such conduct. Ms. Tomlinson said the incident caused her to be confused, angry and concerned.

---

1. Interestingly, defendant was acquitted on June 1, 1993, of all charges involving Ms. Franciscus and defendant has pointed to no civil litigation which has followed.

Ms. Tomlinson testified that these were the only two instances where she consumed large quantities of alcohol and could not thereafter remember certain events. She has never been diagnosed as being susceptible to alcohol related blackouts.

Julie McPherson, a friend of Ms. Tomlinson's, verified that she was very upset following the September 1991 incident because she couldn't remember what she had done while intoxicated the night before.

At trial the court denied defendant's request to 1) show Ms. Tomlinson's propensity to engage in consensual sex after consuming large quantities of alcohol, and 2) not being able to recall the March 1992 event based on the September 1991 incident, on the basis of *Commonwealth v. Smith*, 410 Pa. Super. 363, 599 A.2d 1340 (1991). In that case the Superior Court stated,

"The rape shield statute 'is a bar to admission of testimony of prior sexual conduct involving a victim, whether it is consensual or the result of non-consensual or assaultive behavior, *unless it has probative value which is exculpatory to the defendant'*... (emphasis added) To that end, limited exceptions to the broad exclusion of the Rape Shield Law have arisen to demonstrate the Rape Shield Law 'will bow to a defendant's right to confront and cross-examine when a specific proffer demonstrates that the proposed inquiry is intended to elicit relevant evidence, which is more probative than prejudicial, and which is not cumulative of other evidence available without encroaching upon Rape Shield Law protections....' " *Id*. at 368-69, 599 A.2d at 1342. (citations omitted)

The court went on to add that,

"[E]vidence sought to be admitted over the broad exclusion of the Rape Shield Law must be analyzed in light of three factors: (1) its relevance to attack credi-

bility or show bias; (2) its probative value versus its prejudicial effect; and (3) whether alternative means exist to attack credibility or show bias." *Id.* at 371, 599 A.2d at 1344.

Applying these factors to the instant case it becomes clear that reference to any sexual conduct in September 1991, must be excluded. First, we note that Ms. Tomlinson was not positive that she engaged in sexual intercourse during that incident. If the inference leads to the conclusion that sexual intercourse occurred then the Rape Shield Law excluded it. If she didn't engage in sexual intercourse, then any reference to the September 1991 incident is irrelevant and prejudicial. Second, defendant was not denied the opportunity to cross-examine Ms. Tomlinson on her prior loss of memory after consuming a large volume of alcohol and to argue that the alcohol affected her ability to recall events on the occasion of March 1992. Allowing reference to possible sexual conduct in September 1991, would be both harassing and embarrassing.

Finally, defendant argues juror misconduct in that juror no. 28 rendered a verdict based upon considerations other than the evidence presented. This issue was raised in a supplemental motion filed on May 24, 1993. A hearing was held on July 26, 1993, which elicited the following information. On the second day of trial an Adams County Probation Officer who knew the juror saw her exiting the courtroom. The juror mentioned being surprised at being on the jury because her husband was a deputy sheriff. She appeared anxious or irritated and wondered if she would "get in any trouble from this trial."

The probation officer advised her to "just follow your conscience." The juror told the court that she gave a fair verdict based upon the evidence and that her verdict

was not affected by how others might react. She further related that no person influenced her verdict.

There is nothing with this scenario which warrants a new trial.

Accordingly, the attached order is entered.

## ORDER

And now, October, 31, 1994, in consideration of the attached opinion, defendant's post-verdict motions are denied.

Sentencing is hereby set for 9 a.m. on November, 30, 1994, in courtroom no. 2.

The parole office shall prepare a pre-sentence report and have it available for sentencing.